## Case No. 8,061.

### LANGDON et al. v. GODDARD.

[3 Story, 13.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1843.

PLEADING IN EQUITY—ANSWER—IMPERTINENT AND IMMATERIAL MATTER — INCOMPLETE ANSWER— EVASIVE ANSWER—OBJECTIONS TO ANSWER.

1. Where in the answer to a bill in equity, an allegation was made impeaching the bona fides and validity of a codicil to a will, which had been already approved and allowed by a court having competent and exclusive jurisdiction over the probate thereof, it was ordered that the allegation be expunged as being impertinent and immaterial.

2. Where, also, there was an allegation in the answer setting up an attempted settlement by the defendant with the plaintiffs, of the nature and terms of which no account was given, and which was never acceded to by the plaintiffs, it was ordered to be expunged as immaterial and irrelevant.

3. Where an interrogatory was put as to "whether on the 20th day of August, 1838, the said A. prepared and procured the signature of the said B. to a codicil, in which the said B. bequeathed to the said A. the said notes of C. and D., and whether the said A. retained the codicil after its execution"—it was *held*, that although the interrogatory was not so full and precise as it should have been, yet that it was sufficient to call for a full and explicit answer to its plain import, and as the answer was inexplicit and evasive, the defendant was ordered to make a full disclosure

of the facts, and to pay the costs of the hearing on the exceptions; and leave was granted to the plaintiff to file additional interrogatories.

[Cited in Pierce v. Brown, 7 Wall. (74 U. S.) 212.]

[The bill in this case was originally filed by the plaintiffs against William Goddard and another. The bill was dismissed for want of certainty and other reasons after answer. Case No. 8,060. The present suit is by the same plaintiffs against William Goddard.]

The bill in substance stated as follows: That Paul Langdon and Jeremiah S. Putnam are executors of the will and codicils of Elizabeth Sewall, widow, deceased; that the said Elizabeth Sewall died at York, Maine, on the 8th day of September, A. D. 1838; that her will, dated 25th July, 1834, and two codicils thereto, the one dated the 11th July, 1838, the other, 21st August, 1838, duly signed, published and attested, were, after her decease, duly proved, approved and allowed at a court of probate held at North Berwick within and for the county of York and state of Maine aforesaid,—that the plaintiffs accepted the trust and filed bonds in said probate court pursuant to law, and thereupon said probate court thereafterwards, on the 6th of May, 1839, issued letters testamentary to your orators. That the said Elizabeth Sewall, prior to her decease, was aged, and infirm, and was unable personally to manage her estate, and that, during the last seven or eight years of her life, she employed the said William Goddard as her confidential agent and attorney, to receive and collect her dividends and money loaned, and to invest the same upon mortgage or otherwise, as he should consider most advantageous for her interest. That during the said seven or eight years the said William Goddard was the confidential medical adviser of the said Elizabeth Sewall,—and that as her confidential agent, on the 25th October, 1830, he loaned to John Floyd of Kittery, state of Maine, the sum of five hundred dollars, the money of said Elizabeth, then in the hands of said Goddard as her attorney, and took therefor the note of said Floyd, signed by Cushman and Goodrich as sureties, and further secured by a mortgage of said Floyd's real estate, which note was payable to said Elizabeth or order in one year from its date, with interest semi-annually. That the said Goddard, as her confidential attorney, on the first day of January, 1835, loaned to Theodore J. Harris of Portsmouth, in said state of New Hampshire, the sum of $3000, and took therefor and of that date the note of said Harris, made payable in 18 months from its date, to the said Elizabeth or order, with interest semi-annually, secured by a mortgage to the said Elizabeth of certain real estate therein described. That the said Goddard had in his hands and possession, at the decease of the said Elizabeth, other monies belonging to the said Elizabeth and entrusted and retained by him as her con-

[1] [Reported by William W. Story, Esq.]
14 FED. CAS.—70

fidential agent and attorney, the amount and character of which the plaintiffs cannot particularly set forth. That the notes and mortgages so made, were, after the execution thereof by the said Floyd and by the said Harris, from time to time up to the 9th of November, 1836, entrusted to the said Goddard for the purpose of collecting the interest, which had accrued thereon, and to receive such payments as they might make thereon. That on the said 9th of November, 1836, the said Elizabeth Sewall was the holder of a note of hand dated 10th December, 1832, signed by Thomas Farrington, Jeremy Eastman, Jr., Andrew McMillan and Moses Davis, payable to the said Goddard or order, and by him endorsed, in three years from its date, with interest from the 15th January, 1833; and of another note signed by the same persons, dated on the same 10th of December, for the sum of $300, and payable to the said William Goddard or order in four years from its date, with interest from the 13th January, 1833, and by said Goddard theretofore endorsed to said Elizabeth. That the said Goddard on the 9th of November, 1836—the aforesaid confidential relations still subsisting between him and the said Elizabeth—represented to her, that he was owner of twelve and a half shares in the Portsmouth Manufacturing Company, and that said company was indebted to him in the sum of $625, for money loaned by him to the said company; also, that he owned two shares in the New Market Manufacturing Company; which shares and loan the said Goddard represented to be of the value of $5000 and upwards, and solicited the said Elizabeth to purchase the same, and said, that he would receive in payment therefor, the two notes herein last aforesaid mentioned, together with the balances, which then remained due and unpaid upon the aforedescribed notes of Floyd and Harris. The said Goddard also represented and agreed, that the said Elizabeth should be at liberty at any time thereafter to rescind the said purchase, if she elected so to do, reserving to himself a similar right. That the said Elizabeth was induced by the said representations to make such proposed purchase, reposing confidence in the said Goddard, and thereupon endorsed and delivered to the said Goddard the aforesaid several notes; that the property so conveyed to the said Elizabeth was of little or no value; that the stock of the Portsmouth Manufacturing Company was on the said 9th of November of little or no value; that the said Goddard thereafterwards, notwithstanding the said sale of said stocks and the debt so due to him from said company, managed and controlled the same as his own property;—that on the 7th of November, without the previous knowledge of the said Elizabeth, he caused an assignment of the said Portsmouth Manufacturing stock and the debt so due to the said Goddard for the loan as aforesaid, to be made to the said Elizabeth, as a means of inducing her the more readily to accede to his proposed sale. That on the 18th August, 1838, the property so as aforesaid sold to the said Elizabeth had become entirely worthless, and the fact had become generally known, and the said Goddard then stated to the said Elizabeth, that he felt bound to reconvey to her the aforesaid notes so sold to him, and that he would so do whenever she wished the same done. That thereafterwards the said Elizabeth frequently called upon the said Goddard to refund to her the amount of the said notes so sold by her to him, or return the same, and that the said Goddard repeatedly promised so to do. That on the 20th day of August, 1838, the said William Goddard prepared with his own hand an instrument purporting to be a codicil to the will of said Elizabeth, and procured the said Elizabeth to sign the same, therein and thereby bequeathing to him the aforesaid notes of Floyd and Harris, and also all sums of money due from him to the said Elizabeth, which codicil was so signed by the said Elizabeth by inducement of the said Goddard, and by reason of the confidence subsisting between the said Elizabeth and the said Goddard, and was thereafterward revoked by the said Elizabeth, which codicil was, after its execution, carried away by the said William, and is now in his possession. That the balance due upon the note of the aforesaid Harris has heretofore been paid into and now is in the register of this court. That the said William Goddard on the 20th June, 1838, after the sale and purchase herein stated had taken place, and after the said Elizabeth had elected to consider the same as rescinded, the said Goddard as attorney for said Elizabeth, in her name and for her benefit, took possession of the real estate so as aforesaid mortgaged to her by Floyd, for the purpose of foreclosure, and advised the said Elizabeth of his so doing. That the said sale so made by said Goddard to the said Elizabeth was induced by fraud and by the confidence subsisting at the time between said parties. That the same was in their life time rescinded by the said parties, and that the said Goddard, after such sale and recission, repeatedly promised to return the notes so endorsed to him by the said Elizabeth and to pay to her such sums as he might receive thereon. That the said Goddard after such sale and recission thereof, by means of the said codicil, fraudulently endeavored to procure a gift of the notes endorsed to him by the said Elizabeth, and after the death of said Elizabeth, on the 29th April, 1839, in a letter to one Charles O. Emerson, claimed to hold the said notes by way of a gift thereof made to him by said Elizabeth, when in fact no such gift had ever been made. That the said Goddard, after the decease of the said Elizabeth, and after the said executors had claimed the notes so as aforesaid

made by said Floyd and by said Harris, made a voluntary and fraudulent transfer of said notes to Henry Hooper, and the said Hooper thereafterwards, at the request of said Goddard, transferred the same to one Thomas Drown by an agreement also voluntary and fraudulent; that the said Hooper and Drown then were and now are residents and citizens of Boston, commonwealth of Massachusetts, and without the jurisdiction of this court. That they have requested the said Goddard to account with them for and in relation to all the transactions of his agency in managing the property of said Elizabeth, and also to surrender the notes of said Harris. and said Floyd, which the said Goddard refuses.

The bill closes with a prayer that the said Goddard may be decreed to render a full and true account of his agency in the collection and investment of the funds of the said Elizabeth, and to pay to the plaintiffs such sum as upon such accounting may appear to be due, and that he may be decreed to deliver to said orators the note of the said Floyd and assign the mortgage given to secure the same, that he may be decreed to deliver the note of the said Harris, and assign the mortgage given to secure the same, or to pay the proceeds thereof to the plaintiffs, and that the plaintiffs may have such further relief, or may have such other relief, as the nature of the case may require, and as shall be agreeable to equity.

The defendant filed his answer denying the principal matters stated in the bill, so far as they constituted a foundation for relief. But it is unnecessary to state the allegations of the answer, except so far as applies to the exceptions filed by the plaintiffs. The exceptions were as follows:

First Exception. For that the allegation on the ninth page of said answer in the words following, to wit, "that said Elizabeth Sewall being weak in body was induced, on the 21st day of August, A. D. 1838, by the urgent solicitations and importunities of the complainants, or of Paul Langdon, one of them, although she earnestly desired that the defendant should be sent for before she executed the same, which the said complainant refused to do, to execute the codicil to her will, bearing date the twenty-first day of August, A. D. 1838, which this defendant believes she never would have done, if she had fully perceived the bearing of said codicil, or fully understood the views, intentions and objects of these complainants, who this defendant fully believes dictated the contents of the same," is impertinent and ought to be expunged.

Second Exception. For that the allegation on the tenth page of said answer in the words following, to wit: "That in the spring of 1839, a dispute having arisen between this defendant and the complainants afore-

said, he wrote to Charles O. Emerson, Esquire, of York, whom he knew to be friendly to the complainants aforesaid, and to be employed by them occasionally in his profession, and solicited him to effect if possible a settlement between him and these complainants, that after some trouble and delay, he assenting, the terms of an adjustment were arranged, to which this defendant agreed, but to which the complainants would not afterwards adhere," is impertinent and ought to be expunged.

In all which particulars the said complainants insist, that the defendant's said answer is irrelevant, impertinent and scandalous. Wherefore the said complainants do except thereto, and humbly pray that the impertinence and scandal of the said answer excepted to as aforesaid may be expunged with costs.

Exceptions for Insufficiency of the Said Answer. For that the said defendant hath not to the best of his knowledge, remembrance, information and belief, answered and set forth "whether on the 20th day of August, A. D. 1838, the said Goddard prepared and procured the signature of the said Elizabeth to a codicil, in which the said Elizabeth bequeathed to the said Goddard the said notes of Harris and Floyd, and whether the said Goddard retained the codicil after its execution." In all which particulars the said answer of the said defendant William Goddard is imperfect, insufficient and evasive; and the complainants, therefore, except thereto, and pray, that the said defendant William Goddard may put in a further and better answer to the said bill of complaint.

The answer upon the points excepted to is as follows: "And this defendant further answering says, that in a conversation with said Elizabeth Sewall prior to the twentieth day of August, A. D. 1838, she informed this defendant for the first time, that she had appointed him executor of her will, that she had made a codicil to her will, altering it with a view to give to her nephew, Paul Langdon, one of the complainants aforesaid, and his wife, a life estate in the property devised and bequeathed to him by said will, and also to Eliza Langdon a life estate in the property devised and bequeathed to her by said will, and that afterwards, on the twentieth day of August, at the request of the said Elizabeth Sewall, he requested Charles O. Emerson, Esq. of York to draw up a codicil to the will of said Elizabeth, which said Emerson did, and this defendant copied the same, making some slight alteration in the same, which alterations were made at her request, which this defendant does not now recollect; the object of said codicil was more clearly to define her intentions in regard to giving to the said Paul Langdon and wife and the said Elizabeth Langdon a life estate in the property given to them, rather than the property itself, and such, according to the

best knowledge, information and belief of this defendant, was the purport of the principal part of said paper or codicil; there might have been in said codicil a clause bequeathing or releasing to this defendant the note of said Floyd, as also the note of said Harris; but this defendant does not now recollect and cannot tell the precise terms of said clause, but it was inserted, as he was to be the executor of said Elizabeth Sewall, for the purpose of preventing any misunderstanding or dispute, that might possibly arise between the devisees of said Elizabeth and this defendant, as executor as aforesaid, after her decease, and for the purpose of confirming the understanding between the parties as expressed by the said Elizabeth to this defendant on said thirteenth day of said August, and was in fact designed by the said Elizabeth, as this defendant believes, more as a memorandum of the wishes and views in relation to the property she might leave, than as a codicil to her will: after the same was prepared, this defendant, at the urgent solicitations of the said Elizabeth, called in persons to be witnesses, and she freely and of her own accord executed the same, and the same was signed by the witnesses, and as this defendant supposed, that the said Elizabeth intended said paper to be in some measure as a guide for him while acting as her executor, after the same was executed, he took the same and had it for some time in his possession, but he has lately looked among his papers for the same and cannot find it, and he does not know where it now is, nor what has become of the same, nor into whose possession it has gone, nor that he has seen nor read the contents of the same for the last two years or more, and he cannot now state from recollection the contents of the same any more fully than he has already done in this answer; and this defendant further says, that said Elizabeth Sewall, being then weak in body, was induced on the twenty-first day of said August, 1838, by the urgent solicitations and importunities of the complainants, or of Paul Langdon, one of them, although she earnestly desired, that this defendant should be sent for before she executed the same, which the said complainants refused to do, to execute the codicil to her will bearing date the twenty-first day of August, A. D. 1838, which this defendant believes she never would have done, if she had fully perceived the bearing of said codicil, or fully understood the views, intentions and objects of these complainants, who this defendant fully believes dictated the contents of the same. And this defendant further answering says, that he never considered the said notes of Floyd and Harris a gift from said Elizabeth Sewall to this defendant, nor alleged it, as the ground of his claim to the ownership of them; that in the spring of 1830, a dispute having arisen between this

defendant and the complainants aforesaid, he wrote to Charles O. Emerson, Esquire, of York, whom he knew to be friendly to the complainants aforesaid, and to be employed by them occasionally in his profession, and solicited him to effect if possible a settlement between him and these complainants; that after some trouble and delay, he assisting, the terms of an adjustment were arranged, to which this defendant agreed, but to which the complainants would not afterwards adhere; and in one of the letters to said Emerson from this defendant, he may have stated that said Elizabeth gave said notes to him, or released said notes to him, or something to that effect, for this defendant does not now recollect the language, and although he has applied to said Emerson for the letters he sent him or copies of them, he has not been able to get any letter containing any such expression, and whether there was any such letter this defendant does not now know— but by such expressions, if any such were made, this defendant then and now did not and does not mean to be understood as resting his claim to the ownership of said notes upon the ground of a gift from said Elizabeth, but by such expressions he meant only, that said Elizabeth, on said thirteenth day of August, 1838, entirely freed him from all moral or honorable obligations he might deem himself under to repurchase said shares in said New Market and said Portsmouth Manufacturing Companies, for he insists he never was under any legal obligations whatever to repurchase the said property."

Mr. Hackett, for plaintiff.

J. W. Emery, for defendant.

STORY, Circuit Justice. I am of opinion, that all the exceptions to the answer are well taken, and ought to be allowed. The first exception turns upon the allegations in the answer therein referred to, by which an attempt is made by a side wind to impeach the bona fides and due execution of the codicil to the will of Mrs. Sewall, and by implication to insinuate that it was procured by fraud and imposition. Now, it is well known, that the courts of probate have a full and exclusive jurisdiction, as well in New Hampshire as in Maine, over the probate of wills, and that their decree, affirming the validity of a will or codicil, and allowing the same, is conclusive upon the subject matter, and is not reexaminable elsewhere. The present codicil has been duly admitted and allowed by the probate courts of both states. The allegation of the answer, here excepted to, is, therefore, at once impertinent and immaterial, and endeavors to cast a shade upon the transaction, which is not justifiable or excusable. It is not a matter which can be filed in controversy in the present suit, or admitted to proof.

The second exception is to the allegation in the answer setting up an attempted settlement and arrangement, of the nature and terms of which no account is given, by the defendant, with the plaintiffs, through the means of a professional friend, which was not accepted or adhered to by the plaintiffs, and therefore failed of its purpose. What is this but to stuff the answer with immaterial and impertinent suggestions for the purpose of giving a false gloss and coloring to the controversy? Besides; as the nature and terms of the proffered settlement and arrangement are no where stated, it is impossible for the court to see what possible bearing it could properly have upon the cause.

The third exception is the insufficiency of the answer to the 8th interrogatory propounded by the bill, and states the very words of that interrogatory. That interrogatory undoubtedly was intended to refer to the following allegation in the bill, viz.: "Your orators further say, that thereafterwards the said Elizabeth frequently called upon the said Goddard to refund to her the amount of the said notes so sold by her to him, or return the same, and that the said Goddard repeatedly promised so to do. That on the 20th day of August, 1838, the said William Goddard prepared with his own hand an instrument purporting to be a codicil to the will of said Elizabeth, and procured the said Elizabeth to sign the same, therein and thereby bequeathing to him the aforesaid notes of Floyd and Harris, and also all sums of money due from him to the said Elizabeth, which codicil was so signed by the said Elizabeth by inducement of the said Goddard, and by reason of the confidence subsisting between the said Elizabeth and the said Goddard, and was thereafterward revoked by the said Elizabeth, which codicil was, after its execution, carried away by the said William, and is now in his possession." It is certainly not as pointed, full and precise, as it ought to be to meet all the stress of the allegations of the bill. It does not interrogate as to the present possession by the defendant of that codicil, or as to what has become of it, and when he last saw it, and what were the exact purport and words thereof; nor does it call upon the defendant to produce it. Still, however, it is sufficient to call upon the defendant for a fair and full answer to the plain import and objects thereof. I cannot but consider the answer put in to this point as inexplicit and evasive, if it does not deserve the stronger imputation of being disingenuous. I shall therefore direct that the defendant put in a more full and direct answer to the interrogatory and allegation in the bill, applicable thereto so that the justice of the case may on this point be fully presented to the court. I shall also give leave to the plaintiff, to put additional interrogatories to the defendant applicable to this same allegation, so as to compel a direct and positive disclosure of the facts appertaining thereto. The defendant is to pay the costs of the hearing upon and allowance of these exceptions, which I shall direct to be taxed at ten dollars.