### KELLEY et al. v. BOETTCHER et al.[1]

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

#### No. 870.

1. EQUITY PLEADING—SCANDALOUS AND IMPERTINENT MATTER.

Equity Rules 26 and 27, authorizing reference to a master, on exceptions, to expunge impertinent or scandalous matter from the bill, do not abrogate or curtail the inherent power of the federal courts in equity to strike out rambling or tautological pleadings, and purge their records of scandalous or impertinent matter, on their own motion, and in the absence of exceptions.

2. SAME.

Scandal in a pleading consists of any unnecessary allegation bearing cruelly on the moral character of an individual, or stating anything contrary to good manners or anything unbecoming the dignity of the court to hear. Impertinence consists of any allegation that is irrelevant to the material issues made or tendered.

3. SAME—DISCOVERY—INTERROGATORIES.

A complainant is entitled to a discovery of such documents and facts only as will aid in the maintenance of his title or cause of action. Interrogatories which go beyond this, and seek disclosure of a title or claim of the defendant having no relation to complainant's title or cause of action, are inquisitorial and unwarranted.

4. SAME—STRIKING FROM FILES.

The circuit court has power to order the striking from its files of a rambling and verbose bill, of excessive length, containing much impertinent and scandalous matter, and to permit complainants to file within a stated time, as of the date of the original filing, a new bill not exceeding a prescribed length.

5. LACHES—STATUTES OF LIMITATION.

The rule that courts of equity are not bound by, but act in analogy to, the statutes of limitations, means that under ordinary circumstances the suit will not be stayed for laches before, and will be stayed after, the time fixed by the analogous limitation at law: but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer period, or to forbid its maintenance after a longer period, than that fixed by the statute, the chancellor will not be bound thereby, but will determine the extraordinary case in accordance with the equities which condition it.

6. SAME.

When a suit is brought within the time fixed by the analogous statute, the burden is on defendant to show, either from the face of the bill or by

[1] Rehearing pending.

his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when the suit is brought after the statutory time, the burden is on complainant to show in his bill that it would be inequitable to apply it to his case.

**7. SAME—FRAUD.**

The maxim that no time runs against the victim of a fraud while its perpetrator fraudulently and successfully conceals it is applicable to the case of one purchasing an interest in a mine for a trifling consideration, by falsely and fraudulently representing that it is full of water, and cannot be examined, and by this means inducing the vendors, who live at a distance, to delay investigation as to the actual facts.

**8. SAME—PARTIES—CANCELLATION OF DEED—FRAUD.**

Where one seeking to obtain title to an interest in a mine, by fraudulent representations, induces both the owner and his prospective heirs to join in a deed, such heirs may properly join with the owner in a suit to set aside the deed, though they in fact have no present interest in the property or its income.

**9. EQUITY—PROPER AND NECESSARY PARTIES.**

A proper party, as distinguished from one whose presence is necessary to the determination of the controversy, is one who has an interest in the subject-matter of the litigation, which may be conveniently settled therein.

**10. SAME—JOINDER OF CAUSES OF ACTION.**

A suit seeking, as against one of the defendants, the cancellation of a deed, for an interest in a mine, and, as against such defendant and two others, to recover the proceeds of ore extracted from the mine prior to the date when a mining corporation was formed, and, as against such corporation, the proceeds of the mine thereafter, is not demurrable for misjoinder of causes of action, when the bill alleges that all the defendants joined in employing an agent who, by false representations and concealment, procured the deed which it is the main purpose of the suit to set aside.

**11. SAME.**

There is no fatal misjoinder of causes of action in any bill which presents a common point of litigation, the decision of which will affect the whole subject-matter, and settle the rights of all the parties.

**12. SAME—CANCELLATION OF DEED—SUFFICIENCY OF BILL.**

In a suit to cancel a deed of an interest in a mine, where the bill contains sufficient allegations of fraudulent representations and concealment to warrant the relief sought, the effect thereof will not be annulled by other allegations, contained in that part of the bill explaining complainant's delay in commencing suit, showing that they never have obtained any knowledge of the facts constituting the fraud charged, other than the representations made to them to induce the execution of the deed, except as communicated by their solicitor, who ascertained them from "the unreliable reports of newspapers; and the general and unreliable rumors in and about" the city near which the mine is situated.

**13. SAME—RIGHT TO DISCOVERY.**

The statutes permitting parties to be called as witnesses, and examined by the opposite party, have not abrogated or curtailed the power of courts of equity to enforce discovery according to equitable principles.

Appeal from the Circuit Court of the United States for the District of Colorado.

This is an appeal from a decree which dismissed a bill to rescind a sale of one-sixth of a mining claim, and to obtain an accounting and recovery of the proceeds thereof. The appellants exhibited their original bill in the court below on June 19, 1895. On September 2, 1895, two of the appellees interposed a demurrer to this bill, and on June 30, 1896, the demurrer was sustained. The appellants amended their bill, and the appellees demurred to the amended bill. On July 7, 1896, the circuit court sustained this demurrer, and rendered an opinion in which it declared that the amended bill did not state facts sufficient to warrant the rescission of the sale or any other relief; that the appellants were not entitled to address any interrogatories to the appel-

less or to any discovery in the suit, since parties in interest may be compelled, under the federal and state statutes, to testify concerning any matter in issue between them; that the amended bill, which covered 170 typewritten pages, and contained scandalous and impertinent averments, must be stricken from the files of the court; and that the appellants should be permitted to file a new bill as of the date of the filing of the original bill. Upon the rendition of this opinion, an order was made sustaining the demurrer, withdrawing the original and amended bills from the files, and granting permission to the appellants to file a new bill as of June 19, 1895, which should not exceed 25 typewritten pages in length and which should contain only the matters declared to be proper for consideration in the opinion upon the demurrer. On July 13, 1896, the appellants elected to stand on their amended bill, and declined to file a new bill under this order, and the court dismissed their suit. The appeal challenges this decree of dismissal.

Edward B. Green and Amos Green, for appellants.

Charles J. Hughes, Jr., and Charles Cavender, for appellees.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The authority to control the volume and character of the pleadings and proceedings before it, and to strike from its files those that are obnoxious to its rules and practice, is necessary to the speedy and efficient administration of justice, and is one of the inherent powers of a court of chancery, which has been exercised without question since the establishment of such courts. Daniell, Ch. Prac. *350. Prolixity, tautology, scandal, and impertinence have been among the common faults of bills in equity time out of mind. Lord Keeper Bacon made an order that no bills should contain more than 15 sheets of paper; and Lord Chancellor Egerton followed it with another, to the effect that no sheet should contain more than 15 lines, and an excess of the allotted quantity furnished good ground for demurrer. Story, Eq. Pl. § 266, note 1. The supreme court leveled Equity Rules 26 and 27 at these evils. Those rules declare that every bill shall be expressed in as brief and succinct terms as it reasonably can be, and that, if it shall contain impertinent matter or scandalous matter not relevant to the suit, it may, on exceptions, be referred to a master, and such matter may be expunged, at the cost of the complainant, unless the court or a judge thereof shall otherwise order. These rules provide that scandalous and impertinent matter may be stricken out by a master after exceptions have been filed, but they do not abrogate nor curtail the inherent power of the federal courts sitting in equity to strike out rambling or tautological pleadings, and to purge their records of scandalous or impertinent matter on their own motion, regardless of the absence of exceptions. They were adopted not to limit the power, but to lighten the burdens of those courts. The authority and the duty of a federal court to keep its records free from stain and scandal are by no means dependent on the ability or disposition of counsel for the litigants before it, but its power is plenary, and its duty imperative, whatever the action of counsel may be. Ex parte Simpson, 15 Ves. 476; Christie v. Christie, 8 Ch. App. 499; Campbell v. Taul, 3 Yerg. 548, 563; Langdon v. Goddard, 3 Story, 13,

Fed. Cas. No. 8,061; Wood v. Mann, 1 Sumn. 578, Fed. Cas. No. 17,-952; Green v. Elbert, 137 U. S. 615, 624, 11 Sup. Ct. 188; Kelley v. Boettcher, 49 U. S. App. 620, 27 C. C. A. 177, and 82 Fed. 794. Scandal, in a pleading in equity, consists of any unnecessary allegation which bears cruelly upon the moral character of an individual, or states anything which is contrary to good manners, or anything which it is unbecoming the dignity of the court to hear. Impertinence consists of any allegation that is irrelevant to the material issues made or tendered. Daniell, Ch. Prac. *347.

The amended bill before us bears the signature of Mr. T. A. Green, and it was before this court at its May term, when a motion was made to strike his brief from its files. Kelley v. Boettcher, 49 U. S. App. 620, 27 C. C. A. 177, and 82 Fed. 794. It contains 49 typewritten pages of interrogatories addressed to certain defendants, who have been dismissed from the suit, which are not printed in the record before us. The bill fills 42 pages of the printed record without these interrogatories. Careful and repeated searches through its labyrinthine mazes have brought to light scattered and disjointed, but reiterated, allegations of the existence of these facts: On November 7, 1886, Thomas J. Kelley died, seised of the undivided one-sixth of the Little Johnny lode mining claim; and the appellant Thomas D. Kelley, his father, inherited that interest under the laws of the state of Colorado, where the claim was located. The appellant Michael P. Kelley was the brother, the appellant Annie B. Kelley was the sister, and the appellant Margaret O. Kelley was the mother, of Thomas J. Kelley; and in the event of the death of Thomas D. Kelley intestate, while seised of this one-sixth of this claim, it will descend to them, under the laws of Colorado. The appellees Charles Boettcher, John F. Campion, and A. V. Hunter wrongfully held the possession of, operated, and appropriated to themselves the proceeds of, this mine until March 5, 1891, when they organized the appellee the Ibex Mining Company, a corporation, and conveyed to it their interests, and delivered to it the possession and control of the mine. From that time until the filing of the bill, the appellees in this case have continued to operate the mine, and to appropriate its proceeds to their own use. In the latter part of the year 1892, they employed one Reger, who lived in Colorado, and knew all about this mine, its condition, value, history, and products, to go to Galena, in the state of Illinois, where the appellants (who were ignorant of the value, history, condition, and products of this mine, and of the business of mining for gold and silver) live, and to induce them, by false representations and the concealment of material facts, to convey the one-sixth interest in it, which Thomas D. Kelley held, to the appellee Charles Boettcher, who afterwards conveyed that interest to the mining company. In order to induce them to make this conveyance, Reger told the appellants that no valuable ore had ever been discovered in this mine; that it had never been profitably worked; that it was full of water to the surface, and on that account could not be examined; that it would require a long time, and the expenditure of a large amount of money, for pumps, machinery, and their operation, to remove the water, so that the mine could be examined or operated; that the mining claim

was of little or no value; and that the one-sixth interest held by Thomas D. Kelley was not worth more than $250. The appellants believed these representations, and were induced thereby to join in a deed of this one-sixth of the mine to the appellee Boettcher, on January 16, 1893, in consideration of $1,000, which Reger paid to Thomas D. Kelley. The facts were, however, that the mine was not flooded with water at this time, but that the appellees were working it night and day, and were extracting from it ore of the value of $200,000 per month; that it could have been examined without expense or difficulty; that before this time gold and silver ores had been discovered on this claim; that it had produced ores of the value of several millions of dollars above the expenses of developing and operating it; and that it had become worth $5,000,000 before this deed was made. Since the deed was made, the mine has continued to increase in value, and the appellees have continued to extract and are still drawing from it ores of the value of $250,000 per month. During all this time they have kept the underground workings of the mine locked and barred, and have persistently concealed the amount and value of its products. They have mixed these products with those of other mines, so that it was impossible to separate them, and they have purchased other mines with the income derived from the proceeds of its products. They are still concealing the amount and value of these products, and falsifying their account books for that purpose. The appellants believed Reger's statement that the mine was flooded with water to the surface; that it could not be examined without the expenditure of large amounts of money and the lapse of much time; and that it was practically worthless, and they received no notice of its actual history and condition until about two weeks before they exhibited their original bill. The prayer of the bill is for a decree canceling the deed of January 16, 1893, for an accounting and recovery of the net income from the one-sixth interest in the mine, and, as auxiliary to this relief, for a discovery, an injunction, and a receiver.

These are all the essential facts which we have been able to extract from this bill after a careful and painstaking examination and analysis of all its averments. They could be easily and forcibly stated in four typewritten pages. They are not found in brief and succinct terms in this bill, as required by rule 26, and it furnishes no connected statement of them whatever. They are to be found only after careful search in isolated parts and separate allegations scattered through the 42 printed pages of the bill, like kernels of wheat in bushels of chaff. Some, perhaps all, of these allegations, are repeated. It is twice alleged that Reger represented that no ore had been found on the claim; that the mine was full of water; that the appellants were induced to make the deed by the fraud of Reger; and that they were related to each other in the way we have stated. The incorporation of the Ibex Mining Company is pleaded three times. It is alleged four times that all of Reger's statements were false, and the bill is stuffed with the adjectives "false" and "fraudulent," and their corresponding adverbs applied ad nauseam to all that was said

and all that was done. This tautology, verbosity, and invective is mixed with impertinence and scandal. For instance, the bill avers that the solicitor for the appellants prepared the original bill in two weeks, and that an able and industrious attorney would have required at least from one month to six weeks to have completed this task. The statute of limitations of the state of Colorado relative to suits of this character is set forth verbatim, and its legal effect is pleaded. The statement of immaterial facts is impertinence, because they have no relation to the issues to be decided; and the statement of matters of law is impertinence, because the court takes judicial notice of the law, and its statement is unnecessary. Story, Eq. Pl. § 266, note 1; Woods v. Morrell, 1 Johns. Ch. 103. The bill contains 72 interrogatories addressed to the appellee Boettcher, 47 addressed to the appellee Campion, 22 addressed to the appellee Hunter, and 20 addressed to the Ibex Mining Company. Many of these questions are irrelevant. They have no relation to any facts material to the appellants' cause of action, nor to their title, but have reference solely to the interests in the mine which the appellees may have derived from strangers before the deed of January 16, 1893, was made. The seventh interrogatory to Boettcher is an example of these irrelevant questions. He is asked whether or not he had any interest in the mine in March, 1891, and, if so, what it was, when and from whom he acquired it. The settled rule is that the complainant is entitled to a discovery of such documents and facts only as will aid in the maintenance of his title or cause of action. Interrogatories which go beyond this, and seek a disclosure of a title or claim of a defendant, which has no relation to the complainant's title or cause of action, are inquisitorial and unwarranted, and many such are found in this bill. Moreover, the bill contains scandalous allegations like this:

"Your orators and oratrixes again most earnestly protest against this honorable court violating all law, and especially the decisions of the supreme court of the United States, which complainants are advised and believe are binding and obligatory upon this honorable court; by compelling these complainants or their solicitor to violate all rules of pleading in order to prevent this honorable court in violation of all law and all precedent from sustaining demurrers to complainants' bill of complaint, and requiring complainants' solicitor to furnish affidavits of all of the facts and circumstances connected with the discovery of the facts constituting the fraud alleged in this case by complainants; and that, too, even when defendants' demurrer to complainants' bill of complaint is a solemn admission of all of the material facts and allegations contained in said bill. ✻ ✻ ✻ And complainants respectfully and most earnestly insist that all such rulings of this honorable court are not only in violation of all precedent and all authority, both state and federal, but that such rulings are judicial acts of oppression as to complainants, and a direct denial of all of the rights secured by the decisions of the supreme court of the United States to complainants, as well as to other litigants in this honorable court; and that such rulings on the part of this honorable court operate as an absolute denial of all rights in this honorable court, and as an act of great judicial wrong and oppression."

So far as the record before us discloses, no order adverse to the appellants had ever been made in this case when these allegations were interposed, except an order sustaining a general demurrer to the original bill; yet this amended bill contains allegations of the

character which we have quoted sufficient in volume to cover two printed pages.

The review of this bill and the quotations from it in which we have indulged are ample to show that it was scandalous, impertinent, prolix, and redundant, and that it contained no succinct and connected statement of the cause of action on which it was based. No exceptions had been filed to it, however, for scandal or impertinence, and it first came to the notice of the court below on the argument of the demurrer to it. Was that court to leave it undisturbed upon its files? The demurrer to the original bill had been sustained by the judge of an adjoining district who had been assigned to the circuit court for the district of Colorado to assist the resident judge. Was the circuit court in Colorado to permit its records to be used to perpetuate this attack upon the character of an absent judge in a private suit, in which he could not be heard? The self-respect, the honor, and the dignity of that court demanded that its records should be purged of the stain and disgrace of this pleading. If a master might have segregated the impertinence and scandal, and have expunged that matter from the bill, he could not have separated and expunged its prolixity and redundancy; nor could he have injected into it a clear and concise statement of the cause of action on which it was based. There was but one adequate remedy, and that was to strike the entire bill from the record, and to permit the appellants to plead again. The power of the court to purge its records of this pleading was plenary, and its duty to exercise it was imperative. The court below was of the opinion that the amended bill should be stricken from the files, and that the appellants should be permitted to file within 30 days a new bill, not exceeding 25 typewritten pages in length, as of the date of the filing of the original bill. Our conclusion is that the circuit court had ample power to make such an order, and that the facts disclosed by this case fully warranted the exercise of that power.

If the order which was actually made had stopped here, we should not have hesitated to affirm this decree. Unfortunately, it did not. It went further, and provided that the new bill should "contain only the matters declared to be proper for consideration in the opinion of the court" on the demurrer. In that opinion the court below had held that the amended bill did not disclose facts sufficient to entitle the appellants to a cancellation of their deed to Boettcher; that their suit was barred by laches; and that they were not entitled to any discovery. In other words, the effect of that opinion was that, if all the facts which we have gleaned from the amended bill were concisely and logically stated, they would entitle the appellants to no relief and to no discovery. The result was that, if the appellants could state no other facts, it was useless for them to file a new bill, and they must stand upon their demurrer. They did so, and the decree of dismissal followed. This conclusion of the suit compels us to consider the sufficiency of the facts stated in the bill to warrant the cancellation of the deed, and a discovery in aid of the relief for which the appellants prayed.

One of the grounds of demurrer upon which the appellees seem to place great reliance is that the appellants are estopped from obtaining any relief here on account of their laches. The deed which they seek to cancel was made on January 16, 1893. Their first suspicion of the fraud was aroused about June 1, 1895. This suit was brought on June 19, 1895. The statute of limitations of the state of Colorado applicable to such a suit is:

"Bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards." Mills' Ann. St. Colo. 1891, § 2911; Gen. St. Colo. 1883, § 2174.

In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 Fed. 415, 420; Billings v. Smelting Co., 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, and 51 Fed. 338, 349; Bogan v. Mortgage Co., 27 U. S. App. 346, 357, 11 C. C. A. 128, 135, and 63 Fed. 192, 199; Kinne v. Webb, 12 U. S. App. 137, 148, 4 C. C. A. 170, 177, and 54 Fed. 34, 40; Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, and 58 Fed. 457, 460; Wagner v. Baird, 7 How. 234, 258; Godden v. Kimmell, 99 U. S. 201, 210; Wood v. Carpenter, 101 U. S. 135, 139. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. The practical result is that a suit in equity for relief on the ground of fraud would not be barred by laches in the state of Colorado in less than three years after the discovery of the fraud, unless unusual circumstances made it inequitable to allow its prosecution. Some of the circumstances which will induce a court of equity to apply the doctrine of laches in a shorter time than that fixed by the statute are the destruction of the muniments of title, the death or removal of parties, the number of innocent purchasers who may be affected, radical changes in the condition and value of the property, and its speculative character. Lemoine v. Dunklin Co., 10 U. S. App. 227, 239, 2 C. C. A. 343, 348, and 51 Fed. 487, 492. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case. The cases of Wagner v. Baird, 7 How. 234; Godden v. Kimmell, 99 U. S. 201; Wood v. Carpenter, 101 U. S. 135, 139; and Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 Fed.

415, 420,—belong to the class of cases in which the doctrine of laches was applied after the statute of limitations had run. The cases of Billings v. Smelting Co., 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, and 51 Fed. 338, 349, and Bogan v. Mortgage Co., 27 U. S. App.347,357, 11 C. C. A. 128, 135, and 63 Fed. 192, 199, belong to the class of cases in which the court refused to apply the doctrine of laches within the time fixed by the statute. In the latter case this court declared that this doctrine was applied by analogy to the statute of limitations, to promote, not to defeat, justice, and refused to invoke it after a delay of 30 months. It is a familiar maxim of the courts of chancery, long since embodied in our statutes, that no time runs against the victim of a fraud while its perpetrator fraudulently and successfully conceals it. Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, and 58 Fed. 457, 460; Alden v. Gregory, 2 Eden, 285; Prevost v. Gratz, 6 Wheat, 481; Michoud v. Girod, 4 How. 503; Badger v. Badger, 2 Wall. 87, 92. The maxim seems to be applicable to this case. Reger induced the appellants to make the deed by false representations. He concealed the facts and the fraud by the false statement that the mine was full of water, and could not be examined, and by this means he induced the silence and inactivity of the appellants, of which his principals now seek to take advantage. But the perpetrator of a fraud can hardly be permitted to successfully plead in a court of equity that he so completely secured and betrayed the confidence of his victim that the latter believed his false statement that no inquiry or examination would avail him aught, so long that, when his faith faltered, it was too late for him to recover. The only extraordinary circumstances disclosed by the amended bill which tend to invoke the application of the doctrine of laches are the speculative character of the mine, and its rapid rise in value from $5,000,000, at the time the deed was made, to $100,000,000, in 1895. It may be that these circumstances, with others which may subsequently develop at the hearing, will be sufficient to require the application of this doctrine to the suit in hand at the final hearing. But in view of the fact that Reger lulled the appellants into security and silence by the statement that it would be useless for them to inquire about or examine the mine because it was flooded, and in view of the fact that the parties who procured this deed have ever since been, and still are, in control of the mine and its products, we are unwilling to hold that, under the allegations of this bill, the speculative character of the property and the change in its value alone render it inequitable to set aside this deed and undo this fraud.

Another objection to the bill is that the appellants Margaret O. Kelley, Michael P. Kelley, and Annie B. Kelley are not proper parties to the suit, because they have no present interest in the property or its income. They are, however, the prospective heirs of Thomas D. Kelley, the present owner. The appellees thought their interest in this property sufficient to warrant them in procuring their joinder in the deed. These three appellants allege that the deed which they were induced to execute may operate as an absolute conveyance of all their interest in the property in case of the death of Thomas D.

Kelley (and this averment must be true if the deed contains the usual covenants of warranty, and it is not set forth, so that we can see that it does not); and they allege that, in any event, it would cast a cloud upon their title. The main purpose of this suit is to avoid this deed. The complainant in a suit in equity has the right to join all proper parties to it. A proper party, as distinguished from one whose presence is necessary to the determination of the controversy, is one who has an interest in the subject-matter of the litigation, which may be conveniently settled therein. Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 49 U. S. App. 523, 530, 82 Fed. 124, 126. In our opinion, the allegations of the bill disclose sufficient interest in these appellants in the deed and the property it conveys to warrant their joinder in the suit.

Another ground of demurrer is that there is a misjoinder of causes of action, because relief is sought against the appellee Boettcher, for a cancellation of the deed of the appellants, against appellees Boettcher, Campion, and Hunter, for the proceeds of one-sixth of the mine prior to the incorporation of the Ibex Mining Company in 1891, and against the mining company for the proceeds of that one-sixth since its incorporation. A conclusive answer to this position is, however, that the bill alleges that all the appellees joined in employing Reger to induce the appellants to make their deed by means of his false representations and concealments, and that all the appellees succeeded in inducing the execution of the deed which it is the object of this suit to avoid. These averments alone are sufficient to constitute all the appellees proper parties to the chief cause of action set forth in the bill. There is another answer to the contention. There is no fatal misjoinder of causes of action in equity in any bill which presents a common point of litigation, the decision of which will affect the whole subject-matter, and will settle the rights of all the parties to the suit. Hayden v. Thompson, 36 U. S. App. 361, 373, 17 C. C. A. 592, 598, and 71 Fed. 60, 67; Chaffin v. Hull, 39 Fed. 887; Brinkerhoff v. Brown, 6 Johns. Ch. 139; Fellows v. Fellows, 4 Cow. 682, 700, 702; Prentice v. Storage Co., 19 U. S. App. 100, 107, 7 C. C. A. 293, 296, and 58 Fed. 437, 441. In Brown v. Safe-Deposit Co., 128 U. S. 403, 412, 9 Sup. Ct. 130, the supreme court declared:

"It is not indispensable that all the parties should have an interest in all the matters contained in the suit. It will be sufficient if each party has an interest in some material matters in the suit, and they are connected with the others. Addison v. Walker, 4 Younge & Col. Ch. 442; Parr v. Attorney General, 8 Clark & F. 409, 435; Worthy v. Johnson, 8 Ga. 236."

Tested by these rules, there is no misjoinder of separate causes of action here. There is a common point of litigation over the ownership of the one-sixth interest in the mine. If it should be determined that Thomas D. Kelly never owned this interest, that decision would terminate the litigation, and settle the rights of all the parties to it. The subject of the litigation is the one-sixth of the mine which the appellants claim, and the proceeds which have been derived from it. The chief purpose of the suit is to avoid the appellants' deed of this one-sixth. But the one-sixth interest, its proceeds, and the deed are all material matters in the suit. They are all

connected with each other, and each of the appellants has an interest in some, if not in all, of them.    The bill is not multifarious.

Another objection to the amended bill is that it does not clearly state facts sufficient to entitle the appellants to any relief.    The question presented by this objection is not entirely free from doubt, and we have arrived at our conclusion upon it with some hesitation, after careful and repeated perusals of the entire bill, after a careful analysis of all its allegations, and after mature deliberation.    The averments of the facts essential to entitle the appellants to a cancellation of the deed which we have discovered in the confused mass of allegations which this bill contains were not found in concise and logical form, but are the fruit of tedious and repeated searches through its mazes. Still, they are in the bill, and many of them are repeated several times. They cannot be ignored.    They do positively state that Reger, who knew the facts, at the instance of the appellees, and for the purpose of procuring the deed of the appellants, who were ignorant of these facts, told them that no valuable ore had ever been discovered in this mine, that it had never been profitably worked, that it was flooded with water to the surface of the ground, and could not be examined without the expenditure of large sums of money and the lapse of much time; that it was practically worthless, and that their one-sixth interest in it was not worth more than $250; and that he thereby induced them to forego an examination of the property, and to deed their interest in it for $1,000, when the facts were that this interest was worth more than $800,000, that rich gold and silver ore had been discovered on the claim, that such ore of the value of millions of dollars above the expenses of mining it had been extracted from this mine, that the mine was not flooded, but was open and easy of examination, and that the appellees were then operating it night and day, and were extracting from it ore of the value of $200,000 every month.    That these facts, standing alone, warrant a cancellation of this deed, does not admit of question.    The difficulty with the case is that the allegations of these facts do not stand alone.    They are followed by other averments which tend to contradict them, and to raise a doubt whether they have any foundation either in the knowledge or in the information of the appellants.    In that portion of the bill in which the appellants seem to be endeavoring to excuse their delay in commencing this suit, they allege, in effect, that they never have obtained any knowledge whatever of the particular facts constituting the fraud charged in this suit, except such as they have obtained from their solicitor; that all they know about it is what was said and done at Galena, Ill., where they made their deed; and that "the only information that complainants' said solicitor has been able to obtain in regard to the fraudulent facts charged in this bill of complaint has been the unreliable reports of newspapers, and the general and unreliable rumors in and about the city of Leadville, near which said mine is located."    At first blush these allegations seem to be suicidal, and there is great force in the argument that they are so contradictory as to be fatal to the positive statements of fraud which we have recited.    A more careful analysis of them, however, and a deliberate consideration of their purpose and effect, in connection with

85 F.—5

all the other averments in the bill, have led us, with some hesitation, to the conclusion that this contention should not prevail.    These allegations do not deny, but they insist, that the appellants have made their statements of the representations and concealments which induced them to forego all examination and inquiry about the mine, and to deed it to Boettcher from their own knowledge.    They concede only that the charges relative to the actual condition of the mine when the deed was made, relative to its value, and relative to its history, and the amount and value of its products, are based on the information which their solicitor has obtained from the reports of newspapers, and from rumors about the city of Leadville.    This concession must be read, too, in connection with the other allegations which the bill contains, to the effect that the defendants have kept the mine locked and barred, and have purposely and persistently concealed their account books, and the amount and value of the products of the mine, so that no accurate information could be obtained upon this subject. Moreover, these averments were not contained in the original bill, and they seem to have been inserted here for the purpose of excusing laches.    The facts relative to the value of the mine and of its products, relative to its condition when the deed was obtained and before, and relative to the part which they took in procuring and using that deed, are peculiarly within the knowledge of the appellees;  for they procured the deed, and they have had the possession, control, and use of the property in dispute.    If their representations to the appellants were true, it will not be an onerous task for them to say so in their answer.    On the other hand, it may be difficult —perhaps it may be impossible —for the appellants to establish or even to learn the facts relative to these subjects with accuracy without a discovery from the appellees.    In view of all these considerations, our conclusion, which has not been reached without some doubt, nor without much hesitation, is that the allegations under consideration ought not to be held to so detract from the positive averments of the essential facts constituting the fraud as to deprive the appellants of a right to the relief which they seek, and to an answer to their bill.    The result of this conclusion is that the demurrer to the amended bill cannot be sustained.

A single question remains, and that must be answered in the affirmative.    It is:  Are the appellants entitled to a discovery, in aid of their title and suit, of the facts within the knowledge of the appellees? It is true that the right to a discovery in courts of equity arose from the necessity of searching the conscience of the opposing party in order to ascertain facts, and obtain documents within his knowledge and control, which the complainants could not reach at law because of their inability to compel the examination of the defendant under oath. It is true that the federal and state statutes now in force which enable the complainant to obtain such an examination have greatly diminished the need of these discoveries;  but it is none the less true that these statutes have neither abrogated the right nor curtailed the power of courts of equity to enforce them.    They have only added another right to that which had already been secured in courts of chancery.    Every bill for relief exhibited in a court of equity is, in

effect, a bill for discovery, because it asks or may ask from the defendant an answer upon oath relative to the matters which it charges. The power to enforce such a discovery is one of the original and inherent powers of a court of chancery, and the right of a party to invoke its exercise is enjoyed in every case in which he is entitled to come into a court to assert an equitable right or title, or to apply an equitable remedy. Story, Eq. Pl. § 311; Bisp. Eq. p. 15, § 557; Pom. Eq. Jur. § 201; Equity Rules 40–44.

The result of the consideration of the entire case is that the amended bill was properly stricken from the files of the court below, but that the appellants should be permitted to file a new bill of not more than 25 typewritten pages for relief, and for a discovery in aid of their suit for this relief. As this is a suit in equity, the entire case is before this court for such action, as is fitting and just. The order here will be that the decree below dismissing the appellants' bill stand affirmed, unless the appellants shall on or before Monday, April 4, 1898, file an amended bill for relief and a discovery in aid of the title and cause of action pleaded therein, covering not more than 25 typewritten pages, a copy of which shall be immediately certified by the clerk of the court below to this court; that, in case the appellants elect to and do file such bill within the time above fixed, the same shall be received and filed as of June 19, 1895; and thereupon the decree appealed from shall stand reversed, the appellees shall be permitted to plead to the new bill in such form as they may be advised at the first rule day occurring 30 days after the same shall be filed, and thereafter the case shall proceed according to the chancery rules. In case the appellants elect to file an amended bill, the costs in this court shall be equally divided between the parties, otherwise, they shall be assessed against the appellants.