30

T. H. Reiter, Appellant, v. Illinois National Casualty Company, et al, Appellees.

Gen. No. 39,415.

McSurely, J., dissenting.

 Heard in the first division of this court for the first district at the April term, 1937. Opinion filed June 28, 1937. Rehearing denied July 10, 1937.

JOHN A. BROWN, of Chicago, for appellant.

OTTO KERNER, Attorney General, JOHN B. HARRIS and WILLIAM C. CLAUSEN, Assistant Attorneys General, H. C. MOORE and L. W. ENSEL, both of Springfield, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

T. H. Reiter filed his complaint in chancery against the Illinois National Casualty Company, a corporation, Claude H. Barr, Arthur M. Fitzgerald, Ernest Palmer, and the Fidelity and Deposit Company of Maryland, a corporation, the gist of which is, as stated by counsel for defendants, that he was divested of his stock in the Illinois National Casualty Company and its affiliates by Ernest Palmer, Director of Insurance of Illinois, as a result of a conspiracy entered into by Palmer, Barr and Fitzgerald, and that they have wrongfully, fraudulently and unlawfully converted the stock to their own use, and he prays that the stock be returned to him or that he be awarded damages for its conversion.

Each of the defendants entered a special and limited appearance and a written motion to dismiss the suit, "for want of jurisdiction and want of venue." Barr, Fitzgerald and Palmer, as ground for their motion, set up (1) that each of them was served with summons in Sangamon county where they were at all times residents; (2) that the transaction out of which plaintiff's alleged cause of action arose took place in Sangamon county and not in Cook county; (3) that the complaint

failed to state any joint cause of action against the five defendants; (4) that it failed to state any cause of action against the Casualty Company or the Fidelity and Deposit Company; and (5) that the Casualty Company and the Fidelity Company were joined as defendants without "probable cause and in good faith for the purpose of obtaining a judgment against either of them, but solely for the purpose of fixing venue against the individual defendants in Cook county rather than in Sangamon county."

The Illinois National Casualty Company, as ground for its motion to dismiss, set up (1) that it was a "newly consolidated company, never was a resident of or had offices in Cook County." and that it was served with process in Sangamon County; (2) that section 8 of the Civil Practice Act [Ill. State Bar Stats. 1935, ch. 110, ¶ 136; Jones Ill. Stats. Ann. 104.008], which provides that suits might be brought against insurance companies incorporated or doing business in Illinois, in any county where the plaintiff resided, did not apply to the instant case but only to suits upon insurance policies and that it was not a proper party to the suit because no cause of action was shown against it. The Fidelity and Deposit Company's motion to dismiss was upon the ground that it was a nonresident of Illinois, and all of the other defendants were residents of Sangamon county and were served with summons in that county where plaintiff's alleged cause of action arose, and that it was joined as a defendant for the sole purpose of fixing the venue in Cook county; that the complaint did not allege any cause of action against it, but the only allegations were that it was surety on Palmer's official bond as Director of Insurance, and that the wrongful acts alleged against him were not his official acts.

The court sustained the motion of each defendant, dismissed the suit, and plaintiff appeals.

The complaint takes up more than 46 pages of the abstract and therefore is not in accordance with the provisions of section 33 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 161; Jones Ill. Stats. Ann. 104.033, which requires that all pleadings "shall contain a plain and concise statement of the pleader's cause of action," nor is it in accordance with the old rules of pleading which were substantially the same as required by section 33. *Kelly v. Boettcher,* 85 Fed. 55.

The allegations of the complaint, so far as it is necessary to state them here, are that plaintiff owned a majority of the stock of the Illinois National Casualty Company; that in December, 1932, Palmer, as Director of Insurance of Illinois, caused an audit of the company to be made, which audit was completed in January, 1933, and showed the company to be in good financial condition, having a surplus over and above its liabilities of $230,000; that in February, 1933, the Illinois National Casualty Company was preparing its annual report to be submitted to Palmer as Director of Insurance; that at that time Barr visited Chicago and discussed the matter of the financial statement with plaintiff and a Mr. Winzer (employed by the Casualty Company) who prepared such annual reports, and Barr stated that the financial statement should, if possible, show that the Casualty Company held some Liberty bonds; that this would indicate that the Casualty Company was in a liquid condition and able to pay its claims, and in this way its agents could meet competition more readily; that on February 28, 1933, plaintiff at Winzer's request called at the latter's office where Winzer handed to plaintiff the annual financial statement in blank form to be signed by plaintiff, as president of the Casualty Company, saying that the report had to be filed with the insurance department by March 1, 1933; that thereupon plaintiff signed the blank form of statement, understanding and believ-

ing that the report would be properly completed by Winzer; that plaintiff heard nothing further about the matter until May 8th following, when an examiner of the insurance department called at the Casualty Company's office in Chicago to examine the securities shown by the annual financial statement, and particularly requested to see the $15,000 worth of United States Liberty bonds which the annual statement showed. Plaintiff expressed surprise and said that the Casualty Company never had any Liberty bonds, and referred the examiner to Winzer for an explanation; that the next day, May 9th, plaintiff received at Chicago a telegram from Palmer as Director of Insurance, directing plaintiff to appear on the next day at Palmer's office in Springfield, and in compliance therewith plaintiff called on Palmer at Springfield, where a conference was held at which plaintiff, Barr, Fitzgerald and Palmer were present. Plaintiff was interrogated about the Liberty bonds and was then told by Palmer to produce $100,000 in cash or securities within two days; that plaintiff protested the time was too short to raise such a large amount when the amount of Liberty bonds was only $15,000.

It is further alleged in the complaint that the Casualty Company and a number of its affiliates, in which plaintiff was also largely interested, would have to be reorganized; that the Casualty Company would have to be rehabilitated and stabilized, and that if plaintiff would assign and turn over to Palmer his stock in the Casualty Company and its affiliates until the rehabilitation or stabilization had been completed, then Palmer would return to plaintiff his property; that afterward plaintiff complied with Palmer's request and assigned his stock in the Casualty Company and its affiliates to Palmer in trust; that afterward there was a consolidation between the Casualty Company and the

United States Underwriters Company and a new charter was issued by the Secretary of State to a new corporation known as the Illinois National Casualty Company (being the same name as the old company) on October 1, 1933.

It is further alleged that on May 13, 1933, to carry out an agreement made by plaintiff and Palmer at Springfield a few days prior, Barr and Palmer arrived in Chicago and went immediately to the office of the Casualty Company, and under Palmer's direction divested plaintiff of his keys to the Chicago office of the Casualty Company and its affiliates, and afterward moved the furniture of the Casualty Company to an office occupied by Palmer in Chicago; that the National Casualty Company since the consolidation, as above stated, is continuing to conduct its business; that plaintiff has a number of times demanded the return of his property, which has been refused, and that Palmer has also refused him access to the records; and that he has at no time received any consideration for the property assigned by him to Palmer. There is the further allegation that Palmer, Barr and Fitzgerald unlawfully conspired to obtain plaintiff's property from him and that the results, as above stated, were brought about by such illegal conspiracy; that the "Casualty Company as allegedly reorganized, merged or consolidated after said date is still operating as an insurance company in the State of Illinois, and said Barr and said Fitzgerald are in control and possession of all the assets of said Casualty Company and its affiliates."

There are many other allegations in the complaint which we think it unnecessary to refer to here.

Section 7 of the Civil Practice Act provides: "Except as otherwise provided in this Act, every civil action shall be commenced in the county where one or

more defendants reside or in which the transaction or some part thereof occurred out of which the cause of action arose.'' Ill. State Bar Stats. 1935, ch. 110, ¶ 135; Jones Ill. Stats. Ann. 104.007.

Section 8 of the same act provides: ''Civil actions may be brought against any insurance company incorporated under the laws of this State or doing business in this State, in any county wherein the plaintiff . . . may reside.'' Ill. State Bar Stats. 1935, ch. 110, ¶ 136; Jones Ill. Stats. Ann. 104.008.

Defendants contend that the venue is in Sangamon and not in Cook county, because Palmer, Barr, Fitzgerald and the reorganized new Illinois National Casualty Company were residents of Sangamon county and were served with process there by the sheriff of that county, and that neither the transaction alleged in the complaint nor any part of it occurred in Cook county. We think this contention cannot be sustained. The record discloses that the Casualty Company and the Fidelity Company were served with process by the sheriff of Sangamon county and also by the sheriff of Cook county, and no contention is made that the Fidelity Company was not properly served in Cook county, but the argument is that no cause of action is alleged against the Fidelity Company. It is true that no cause of action is alleged against the Fidelity Company, but we think it was a proper party. *Payne v. Hook,* 74 U. S. 425. Moreover, it is alleged in the complaint that the defendant, the Illinois National Casualty Company, after the alleged reorganization, merger or consolidation was still operating as an insurance company ''in the State of Illinois.'' That allegation obviously would include Cook county. Moreover, the sheriff of Cook county on April 28, 1936, which was long after the reorganization, certified that he served the Illinois National Casualty Company in Cook county. We are

also of opinion that the allegations of the complaint sufficiently show that some part of the transaction occurred in Cook county. It is alleged that the Casualty Company, prior to the consolidation or reorganization, was conducting its business in Cook county; that Palmer, as Director of Insurance, audited its books in Cook county; that its annual financial statement was made in Cook county; that Palmer, as Director of Insurance, removed its furniture from its offices in Cook county and it is charged that these acts, together with those taking place in Sangamon county, were all parts of one unlawful conspiracy. In such case, section 7 of the Civil Practice Act fixed the venue in Cook county. And since it is alleged that the Casualty Company is continuing to do business in Illinois, and since plaintiff is a resident of Cook county, section 8 of the Civil Practice Act also fixes the venue in Cook county. And since plaintiff was seeking to have stock returned "or that he be awarded damages for its conversion," we think it obvious that the Casualty Company was a necessary and proper defendant, for without it plaintiff could not obtain complete relief. *Payne v. Hook,* 74 U. S. 423.

We do not pass on the sufficiency of the complaint.

Two days before defendants' brief was required, by the rules of this court, to be filed, they made a motion to strike plaintiff's brief for scandal and impertinence —that it contained scandalous and scurrilous matter reflecting not alone on defendants but on high officials of this State. On account of the lateness of the filing of the motion the matter was reserved to the hearing. It is the duty of this court to keep its records clean and free from scandal and therefore the motion will be sustained and the brief stricken. *Robinson v. Rogan,* 247 Ill. App. 620, abstracted; *Green v. Elbert,* 137 U. S. 615; *Royal Arcanum v. Green,* 237 U. S. 531.

In the *Royal Arcanum* case the Chief Justice of the Supreme Court of the United States, in delivering the opinion of the court, said (p. 546): "Before making the order of reversal we regret that we must say something more. The printed argument for the defendant in error is so full of vituperative, unwarranted and impertinent expressions as to opposing counsel that we feel we cannot, having due regard to the respect we entertain for the profession, permit the brief to pass unrebuked or to remain upon our files and thus preserve the evidence of the forgetfulness by one of the members of this bar of his obvious duty. Indeed, we should have noticed the matter at once when it came to our attention after the argument of the case had we not feared that by doing so delay in the examination of the case and possible detriment to the parties would result. Following the precedent established in *Green v. Elbert,* 137 U. S. 615, which we hope we may not again have occasion to apply, the brief of the defendant in error is ordered to be stricken from the files." In the instant case the brief of counsel for plaintiff more flagrantly violates the law and rules of court than did the brief in that case. There the vituperative and impertinent expressions were as to opposing counsel, while in the instant case the scandalous and impertinent expressions reflect on high officials who are not parties to the suit.

The decree of the superior court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

MATCHETT, J., concurs.

McSURELY, J., dissenting: I concur in the order striking plaintiff's brief but dissent from the conclusion reached, as in my opinion the proper venue is Sangamon county, not Cook county.