[No. 2360] .

# C. N. MILLER, APPELLANT, *v.* MARK WALSER AND FRANK MARGRAVE, RESPONDENTS.

[181 Pac. 437]

1. APPEAL AND ERROR — MATTERS REVIEWABLE — ASSIGNMENTS OF ERROR.

Where the appeal is upon the judgment roll alone, no assignment of errors is necessary.

2. APPEAL AND ERROR—MATTERS REVIEWABLE—BILL OF EXCEPTIONS.

On an appeal from the judgment roll alone, where the judgment roll shows that a demurrer to the complaint was presented to the court, and discloses a ruling thereon, an order sustaining a demurrer is deemed to have been excepted to, under Stats. 1915, c. 208, and alleged error in so ruling is not required to be presented by bill of exceptions.

3. APPEAL AND ERROR—MATTERS REVIEWABLE—SUFFICIENCY OF TRANSCRIPT—PRESUMPTIONS.

Where a judgment roll contains a demurrer to the complaint, and an amended complaint is in the record, it will be inferred that the demurrer was sustained, and that the original complaint was superseded by the amended complaint, and the absence of the original complaint from the transcript is a mere technical omission, which could have been cured on suggestion of diminution of the record under supreme court rule 8, and could not have prejudiced the rights of respondent.

4. APPEAL AND ERROR—WAIVER OF RIGHT TO DISMISSAL OF APPEAL.

An objection that transcript of record was not filed within thirty days after the appeal had been perfected, in compliance with supreme court rule 2, was waived, where, after the transcript was filed, counsel for the parties entered into stipulations in which additional time to serve and file points and authorities was given to counsel for respondent, especially where the respondent failed to timely move for dismissal.

5. JOINT ADVENTURES—CONSTRUCTION OF AGREEMENT.

Where parties agreed to use their joint efforts to acquire mining property in equal interest and to convey the title thereto to a corporation to be formed by them for the purpose of taking over the property, the acquirement of the claims being the primary purpose of the agreement, there was a contract of joint adventure, consummated when the minds of the parties met and they made mutual promises to contribute certain money and services.

6. JOINT ADVENTURES—CONSIDERATION—MUTUAL PROMISES.

A contract of joint adventure is sufficiently supported by a consideration growing out of the mutual promises of the parties.

VOL. 42—32

7. JOINT ADVENTURES—MUTUAL DUTY OF MEMBERS—CHARACTER OF RELATION.

Where several parties entered into an agreement to acquire mining property in equal interest and to convey the title thereto to a corporation to be formed by them for the purpose of taking over the claims, one party to furnish certain amount of money and another to examine the claims and ascertain as to whether or not they had any value, the relation created laid upon the one examining the claims a strict duty to deal fairly with the other members, and to give the other members a chance to perform upon having discovered that the claims were of great value, and he could not foreclose their rights to share in the property and profits by advancing the necessary money himself.

8. JOINT ADVENTURES—ADVANCES.

Where an agreement was entered into to acquire mining claims in equal interest, one party to furnish money and another party to contribute his services and experience in inspecting the claims, money advanced by the one inspecting the claims to purchase the ·same, not giving the person who was to contribute the money a chance to participate, will be considered in the nature of a loan to the joint adventure, and for the benefit of all the joint adventurers.

9. JOINT ADVENTURES—CONTRACTS—ENFORCEMENT IN EQUITY.

One member to a contract of joint adventure may sue the other at law for a breach of the contract, or he may bring suit in equity for an accounting.

10. TRUSTS—IMPLIED TRUST—BREACH· OF DUTY BY JOINT ADVENTURER.

Where several persons entered into an agreement to acquire mining property in equal interests, one party to contribute experience and service in inspecting the mining property, a corporation to be formed if he approved the mining property. and the person inspecting the property, in violation of his agreement, withheld from the one agreeing to furnish the money the fact that property was of great value, appropriating the interest of such person by advancing the purchase price himself, an implied trust resulted as effectually as if the absent member had actually furnished the consideration to purchase the property.

11. LIMITATION OF ACTIONS—STATUTE APPLICABLE—BREACH OF CONTRACT.

Action, by one claiming to be member of joint adventure, to establish his interest in the property acquired by the adventure and for an accounting, was founded upon the agreement creating the trust relation between the parties, and therefore governed by the four-year statute of limitation (Rev. Laws, 4970), and not by the three-year statute applicable to actions based on fraud; an allegation in the complaint, that plaintiff was prevented from complying with his agreement to contribute

to the adventure by the concealment by defendants of information, not changing the character of the action to one of fraud, but being a mere excuse for nonperformance by plaintiff.

12. LIMITATION OF ACTIONS—CONTRACTS OF JOINT ADVENTURE—VIOLATION—ACCRUAL OF CAUSE OF ACTION.

An action by a party to a contract of joint adventure for a division of property and an accounting of profits accrued upon breach of the contract by the other members.

13. TRUSTS—IMPLIED TRUST—FRAUDS, STATUTE OF.

Where an implied trust is effectuated by breach of contract, contract on which it was based, notwithstanding it was made for the purpose of acquiring an estate or interest in land, need not be in writing.

14. EQUITY—"LACHES"—PREJUDICE FROM DELAY.

Strictly speaking, laches implies more than mere lapse of time in asserting a right, requiring some actual or presumable change of circumstances rendering it inequitable to grant relief.

15. EQUITY—LACHES—PREJUDICE—NATURE.

Some of the circumstances, in addition to the lapse of time, which will in equity constitute laches, are destruction of the muniments of title, the death or removal of the parties, the number of innocent purchasers who may be affected, radical changes in the condition or value of the property, and its speculative character.

16. EQUITY—LACHES—LOSS OF EVIDENCE.

Any circumstances tending to obscure the truth of a matter, as a loss of witnesses through the efflux of time, may prompt a court of equity to apply the doctrine of laches.

17. EQUITY—LACHES—PREJUDICE.

If it appears that an adverse party has lost any advantage which he might have retained if plaintiff's claim had been asserted with reasonable promptness, or is exposed to any injury through inexcusable delay, a court of equity will not interfere to grant relief to the dilatory claimant.

18. PLEADING—DEMURRER—ADMISSIONS.

On demurrer to the complaint, allegations in the complaint are to be taken as true.

19. JOINT ADVENTURES — ACTION BETWEEN MEMBERS — LACHES — ADVANCES IN VALUE.

Mere fact that mining property has advanced considerably in value should not bar recovery, under the doctrine of laches, by a member of a contract of joint adventure, where the plaintiff was prevented from contributing his share through the fraud and concealment of the other members, and is seeking an accounting.

20. EQUITY—LACHES—DELAY SHORT OF PERIOD OF LIMITATIONS.

Where the statute of limitations has not run, strong circumstances must exist to require the application of the doctrine of laches.

21. PLEADING—LACHES—DEMURRER TO COMPLAINT.
　　On demurrer to complaint, on ground that it shows that plaintiff was guilty of laches, it must appear from averments in complaint that plaintiff was guilty of laches.

APPEAL from First Judicial District Court, Washoe County; *R. C. Stoddard,* Judge.

Action by C. N. Miller against Mark Walser and Frank Margrave. Judgment for the defendants, and plaintiff appeals. **Reversed and remanded,** SANDERS, J., dissenting.

*William Woodburn,* for Appellant:

By entering into a stipulation extending the time to file their brief, respondents recognized the appeal, and thereby waived any right they had to move for a dismissal. Henningsen v. T. & G. R. Co., 32 Nev. 51. "We think, also, that the point raised by counsel for appellant that the respondents, by entering into numerous stipulations heretofore referred to, which reserved no right to object or except to the sufficiency of the record, waived the right to move to dismiss, or to strike upon any grounds that were not jurisdictional." Botsford v. Van Riper, 32 Nev. 225.

Respondent should note in his brief any objections to the transcript, or "the same will not be regarded." Rule 8, Sup. Ct. The transcript does not contain the original complaint. It discloses, however, that a demurrer was interposed to the original complaint and sustained by the court. The original complaint, therefore, became functus officio, and was superseded by the amended complaint. "The amended complaint * * * entirely supersedes the original complaint." McFadden v. Ellsworth M. & M. Co., 8 Nev. 60.

If the transcript was delayed for several days in filing, respondents have waived their right to have the case dismissed, not having moved promptly for a dismissal.

A motion to strike and a motion to dismiss are not parts of the judgment roll. Mook v. City, 58 Pac. 826.

The statutes of Nevada and California are identical as to what constitutes the judgment roll. Rev. Laws, 5273; Kerr, C. C. P. 670. When allegations of a complaint are of sufficient importance that a desire is evidenced by a motion to make them more specific and certain, the moving party is thereafter estopped to have the same matters stricken. 31 Cyc. 640; Banks v. Ocean Nat. Bank, 53 How. Pr. 51. "Irrelevant, redundant and immaterial matters" may be stricken from a pleading (Rev. Laws, 5067), but matters, terms, "conclusions" are, under the strictest interpretation, to be considered only as allegations of both law and fact. Grinde v. Milwaukee R. R. Co., 42 Iowa, 377; Clark v. Chicago R. R. Co., 28 Minn. 71; Allen v. O'Donald, 23 Fed. 576.

Delay in itself does not constitute laches. There must be, in addition to the delay, some facts or circumstances arising by virtue thereof which make it unjust or inequitable to permit claimant to assert his demand; some injury caused to the party against whom the demand is claimed, in order to constitute laches. "Two circumstances, always important in such cases, are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy." Chase v. Chase, 37 Atl. 804; Galliher v. Cadwell 36 L. Ed. 738; Townsend v. Vandewater, 40 L. Ed. 383; Penn. M. L. I. Co. v. Austin, 42 L. Ed. 626; Just v. Idaho C. & I. Co., 102 Pac. 381; Stewart v. Finkelstone, 92 N. E. 39; 10 R. C. L., sec. 143. There are no facts stated in the complaint to show that respondents have been injured in any way by the delay. The facts stated must, for the purpose of this hearing, be taken as true. Lang Syne M. Co. v. Ross, 20 Nev. 140. This court will not anticipate what facts may be alleged by respondents in their answer. Idem.

There is no fact alleged in the complaint showing that appellant waited until the property proved to be of

great value before instituting his action. In acquiring the property in violation of their agreement with the appellant, respondents committed a fraud, in utter disregard of the rights of appellant. Gamble v. Silver Peak, 34 Nev. 425. The property was of great value at the time of entering into the original agreement. Ripley v. Seligman, 50 N. W. 143.

The allegations of the complaint established a trust fund in favor of appellant and against respondents; it showed, also, that a fraud had been perpetrated upon appellant, and any delay on his part in instituting the action was immaterial. A joint adventure having been established, respondents will be deemed to be holding appellant's proportion of the stock as a trust for the use and benefit of appellant. It is no defense that appellant did not contribute the amount of money agreed upon. Botsford v. Van Riper, 33 Nev. 156. A trust fund having been established by allegations of the complaint, the delay in instituting the suit is immaterial. McIntire v. Pryor, 43 L. Ed. 606.

The complaint contains no allegations which show that by reason of the delay testimony has been lost or any of the facts have become obscured. The action is not barred by the statute of limitations. Rev. Laws, 4967. The stock was held in trust for appellant, who has four years after the repudiation of the trust in which to commence his action. Rev. Laws, 4970; White v. Sheldon, 4 Nev. 265. The respondents could not be injured by the silence or delay of appellant. Naddo v. Bardon, 51 Fed. 493; Bogan v. Morg. Co., 63 Fed. 192; Kelley v. Boettcher, 85 Fed. 55.

The consideration for the contract was founded in the mutual promises of the parties. "A sufficient consideration is afforded to it by the mutual promises of the respective parties." Kind v. Barnes, 16 N. E. 332; Alderton v. Williams, 102 N. W. 753; 23 Cyc. 454. Equity will not permit respondents to deprive appellant of his share in the adventure. Lind v. Webber, 36 Nev.

630. The fact that the appellant had no interest in or control of the property is not essential to the raising of the trust. Hornsilver Cases, 35 Nev. 447.

The allegations of fraud and concealment in the complaint are not so stated as to constitute the foundation of appellant's claim, but simply as a matter of excuse for the failure on the part of the appellant to perform the contract. Kenney v. Parks, 70 Pac. 557; 9 Cyc. 723.

The statute of frauds is not applicable. * * * The case comes within the class of judicial exceptions created by equity to prevent the use of the statutes of fraud in support of inequitable and fraudulent schemes." Hendricks v. Morgan, 167 Fed. 108; Shea v. Nilima, 133 Fed. 213; Botsford v. Van Riper, supra; Hornsilver Cases, supra; Levy v. Ryland, 32 Nev. 460.

*Cheney, Downey, Price & Hawkins,* for Respondents:

The appeal should be dismissed, it not having been filed within thirty days after being perfected. Rules 1, 2, and 3, Sup. Ct. The rules of court have the same force and effect as though they were incorporated in the statutory provisions. Beco v. Tonopah Ex. M. Co., 37 Nev. 203; Collins v. Goodwin, 32 Nev. 342; Skaggs v. Bridgman, 39 Nev. 310.

Interwoven with alleged facts, the amended complaint is made up of statements, conclusions of law, assertions and argumentative matter. They cannot be considered in determining whether or not the amended complaint states facts sufficient to constitute a cause of action, and should have been stricken out on the defendants' motion. Rev. Laws, 5038; Standard Ency. Proc., p. 205, et seq. "The different allegations in a pleading should be consistent with one another, and if inconsistent or repugnant averments appear they may be stricken out on motion. But if the allegations are so utterly repugnant as to destroy one another, so that no cause of action or defense remains, a general demurrer will lie against the pleading." 31 Cyc. 75. The

allegations in the amended complaint not only do not show facts sufficient to warrant the court in declaring a constructive trust, but it affirmatively appears therefrom that there was no constructive trust. Perry on Trusts, vol. 1, 2d ed., sec. 166, p. 187; 39 Cyc. 169; Ency. Evid., vol 13, p. 154. Under the facts set forth in the amended complaint, there was not stated a legally enforcible agreement. Botsford v. Van Riper, 33 Nev. 156. Plaintiff would have no right to participate in the profits of an enterprise to which he had contributed nothing, and could claim no interest in the property acquired by the defendants at their own expense and for their own use, nor in the earnings thereof. Powell v. Maguire, 43 Cal. 11; Prince v. Lamb, 60 Pac. 689; Hyer v. Richmond T. Co., 168 U. S. 471; Mann v. Bowen, 11 S. E. 862; Hawley v. Tesch, 59 N. W. 670.

The facts stated in the amended complaint show that the cause of action, if any ever existed in favor of plaintiff, is barred by the statute of limitations. Rev. Laws, 4967. "The statute runs from the time when by the use of reasonable diligence the fraud could have been discovered." 25 Cyc. 1186, 1190; 19 Am. & Eng. Cas. 110–113; Lang Syne M. Co. v. Ross, 20 Nev. 137; Naddo v. Bardon, 51 Fed. 493; Hansen v. Hansen, 111 N. W. 368.

The alleged agreement, the foundation of plaintiff's alleged cause of action, was an oral agreement to acquire an estate or interest in lands, and it is therefore void under the statute of frauds. Rev. Laws, 1059.

The facts stated in the amended complaint show that plaintiff's action, if any ever existed, is barred under the doctrine of laches. Naddo v. Bardon, 51 Fed. 493; Gamble v. Silver Peak, 34 Nev. 427; Johnston v. Standard M. Co., 148 U. S. 360. The knowledge of the facts and circumstances necessary to warrant the imputation of laches is such as might have been acquired by the exercise of due diligence. Ignorance that is the effect of inexcusable negligence is no excuse for laches, and

therefore, when the essential facts might be learned by due diligence, ignorance thereof will afford no excuse. Am. & Eng. Cas. 110, 113; Lang Syne M. Co. v. Ross, 20 Nev. 126, 137; 25 Cyc. 1186, 1190.

By the Court, DUCKER, J.:

In this action the district court sustained respondents' demurrer to the amended complaint. Appellant refused to amend and elected to stand upon the amended complaint. The court entered judgment dismissing the amended complaint and denying the relief sought by appellant in this action. From the judgment and order sustaining the demurrer, this appeal is taken.

The respondents ask that the appeal be dismissed upon the grounds: First, that the transcript of the record was not filed within thirty days after the appeal had been perfected, in pursuance of rule 2 of the rules of the supreme court. Second, that a complete transcript of the record on appeal or a complete transcript of the judgment roll has not been filed in this court. Third, that no bill of exceptions has been filed in the action. Fourth, that appellant has not assigned, served or filed any assignment of errors, as prescribed by law.

1, 2. As the appeal is upon the judgment roll alone, no assignment of errors is necessary. Talbot v. Mack, 41 Nev. 245. The same is true as to a bill of exceptions. The judgment roll shows that the demurrer to the amended complaint was presented to the court, and discloses the ruling thereon. The order sustaining the demurrer is deemed to have been excepted to. Stats. 1915, p. 321.

The alleged error, thus appearing upon the face of the judgment roll, is not required to be incorporated in a bill of exceptions.

3. The objection presented by the motion to dismiss on the second ground, namely, an incomplete transcript of the record, must be disregarded. This objection is taken to the omission of the original complaint from the

judgment roll, which constitutes the record on appeal. The judgment roll contains the demurrer to the complaint. That it was sustained by the court may be inferred from the amended complaint in the record. The original complaint was therefore superseded by the amended pleading, and the absence of the former from the transcript of the record is a mere technical omission, which cannot affect the rights of respondents, and could have been cured on suggestion of diminution of the record, as prescribed by rule 8 of this court. Rule 8 reads:

"Exceptions or objections to the transcript, statement, the undertaking on appeal, notice of appeal, or to its service or proof of service, or any technical exception cr objection to the record affecting the right of appellant to be heard on the points of error assigned, which might be cured on suggestion of diminution of the record, must be taken at the first term after the transcript is filed, and must be noted in the written or printed points of the respondent and filed at least one day before the argument, or they will not be regarded."

No exception or objection to the transcript on this ground has been noted in respondents' brief as required by said rule 8. For the reasons given, the objection will be disregarded. Kirman v. Johnson, 30 Nev. 150.

4. By the first ground of the motion to dismiss the appeal, it is objected that the transcript of the record was not filed within thirty days after the appeal had been perfected in compliance with rule 2 of the supreme court, which reads:

"The transcript of the record on appeal shall be filed within thirty days after the appeal has been perfected, and the statement settled, if there be one."

It appears from the record that the appeal from the judgment on demurrer was perfected on August 24, 1918, and that the transcript on appeal was filed on October 7, 1918. Notice of motion to dismiss the appeal was filed on November 30, 1918, and served on counsel for appellant on the preceding day. After the transcript on

appeal was filed, counsel for the parties herein entered into two stipulations, one of date of October 21, 1918, and the other of date of November 12, 1918, in which additional time to serve and file points and authorities was given to counsel for respondents.

It is contended by appellant that the effect of these stipulations, and respondents' failure to promptly move for a dismissal under said rule 8, operate as a waiver of the motion to dismiss the appeal. We think the contention must be admitted. As the extension of time given in the stipulations was for the benefit of counsel for respondents, it may be presumed that they were entered into at their request. By entering into these stipulations, which were made for their accommodation, and by reserving no objection therein as to the time when the transcript on appeal was filed, they recognized the appeal, and their failure to timely move for a dismissal under the rule is an additional reason why a waiver of the objection should be enforced against respondents. The right to move to dismiss an appeal may be waived upon any grounds that are not jurisdictional. Botsford v. Van Riper, 32 Nev. 225, 106 Pac. 440; Henningsen v. T. & G. R. R. Co., 32 Nev. 51, 104 Pac. 223. The motion to dismiss the appeal is denied.

We will consider the appeal on its merits. In substance, it is alleged in the amended complaint (which will hereinafter be alluded to as the complaint) that on or about the 16th day of April, 1913, one R. L. Ray had an option to purchase certain mining claims known as Packard No. 1, Packard No. 2, and Packard Fraction, situated in the Rochester mining district, county of Humboldt, Nevada, and represented to appellant and respondents that the said claims were of value; that on the same day all of these parties entered into an oral agreement and joint adventure, promising to use their joint efforts to acquire said claims, and share an equal interest therein, and to thereafter organize a corporation to take over the mining claims and to share equally in the stock issued by said corporation in payment for said

claims; that it was agreed that Ray was to contribute to the joint adventure his right to purchase the claims, Margrave his services, knowledge, and experience as a mining engineer, Walser his legal services required to be rendered to the adventure, and appellant the sum of $2,500; that, before appellant was to contribute the said sum, Margrave was to examine the claims, and if, in his opinion, the same were of value and as represented by Ray, Margrave and Walser were to immediately notify appellant at Reno, Nevada, to that effect; and that the appellant, upon being so notified, was to contribute said sum of $2,500.

It is further alleged that on or about the 17th day of April, 1913, Margrave made an examination of the said mining claims, and, finding them to be of great value and as represented by Ray, informed Walser of the facts; that Walser and Margrave failed, refused, and neglected to notify appellant of these facts or that Margrave had approved the claims, but, on the contrary, suppressed, concealed, and withheld from appellant this information, thus preventing him from complying with the terms of the agreement as to his contribution to said joint adventure of said sum of $2,500; that appellant, at all times mentioned in the complaint, has been and still is ready and willing to do or perform all things by him to be done or performed under the terms of the agreement.

It is alleged that on or about the 18th day of April, 1913, Margrave made the first payment on the mining claims for and on behalf of the joint adventure composed of himself, Walser, Ray, and appellant, and that thereafter, on or about July 11, 1913, respondents and Ray obtained title to said mining claims for and on behalf of the members of said joint adventure and enterprise, and for the use, benefit, and in trust, share and share alike, for all of the members thereof; that on or about the date last aforesaid, Ray and respondents, for and on behalf of themselves and appellant, organized the Nevada Packard Mines Company, for the purpose of taking over the claims in pursuance of the agreement

and joint adventure, and conveyed them to the company, and subsequent to the organization of said company caused to be issued to Ray, Walser, and Margrave, in consideration of the transfer, 750,000 shares of the capital stock of said company, one-fourth thereof to Ray and three-fourths thereof to respondents; that, under the terms of said agreement and joint adventure, Ray, appellant, and respondents were each entitled to one-fourth of said stock, to wit, 187,500 shares; that respondents failed to issue, or cause to be issued and delivered, to appellant said 187,500 shares of stock, but had the same issued and delivered to themselves in equal parts, and have ever since refused and do now refuse to deliver the same to appellant; that the same is of the reasonable value of $93,750.

It is further alleged that respondents have received large sums of money, the exact amount of which is unknown to appellant, as dividends, profits, and emoluments upon said 187,500 shares of stock, and that an accounting will be necessary to determine the amount thereof. In the prayer of the complaint, appellant asks to be declared the owner of the 187,500 shares of stock, and that respondents hold the same in trust for him; that they be required to deliver the same to him, and, in case such delivery cannot be made, that he have judgment against them for $93,750, the value thereof; that an accounting be had of the profits or dividends, etc., received by them on account of said 187,500 shares of stock, and that appellant have judgment for the same; that restraining order be made and a receiver appointed.

The lower court sustained respondents' demurrer to the amended complaint, holding that it appeared therefrom that appellant had been guilty of laches in instituting his action. This appeal is taken by the appellant, Miller, but by the discussion of counsel for respondents, in their brief and in the oral argument in this court, we are confronted with a proposition resembling a cross-appeal from the order and judgment sustaining respondent's demurrer. They insist that the court erred in that

part of the decision holding that the complaint stated a cause of action, if it had not been defeated by the laches of appellant appearing on the face of the complaint. We will consider this phase of the case first.

5, 6. Counsel contend (1) that no enforceable agreement, from which a resulting trust arises, is stated in the complaint; secondly, that, conceding such an agreement to be stated, the cause of action is barred by the statute of limitation and is within the statute of frauds. We are of the opinion that the district court did not err in ruling on these questions. A joint adventure is established by the allegations of the complaint. It appears therefrom that the parties agreed to use their joint efforts to acquire the mining property in equal interest and to convey the title thereto to a corporation to be formed by them for the purpose of taking over the claims. The acquirement of the claims was the primary purpose of the agreement, and it is founded upon a consideration consisting of the mutual promises of the parties. A contract of joint adventure is sufficiently supported by a consideration growing out of the mutual promises of the parties. 23 Cyc. 454; King v. Barnes, 109 N. Y. 285, 16 N. E. 332; Botsford v. Van Riper, 33 Nev. 190, 110 Pac. 705.

The mutual promises, which formed the consideration of the agreement, and upon which the parties acted in pursuance of the enterprise to obtain title to the property, were, as stated in the complaint, the appellant's promise to contribute $2,500, Margrave his services, knowledge, and experience as a mining engineer, Walser his legal services, and Ray his right to purchase the group of claims. The complaint, therefore, states the agreement of the parties; the consideration upon which it was based; the thing that was to be done in pursuance thereof—namely, the acquisition of the claims and the interest of each in the subject-matter of the contract. No further averment is required to invest the arrangement alleged with all the elements of a joint adventure.

But it is asserted by counsel for respondents that the averments of the complaint at most show only a contemplated joint adventure which was never launched, so far as appellant was concerned, for the reason that he did nothing to help the enterprise along and contributed no money for that purpose. We take another view. The joint adventure was consummated when the minds of the parties met and their mutual promises were exchanged. Appellant's agreement to contribute $2,500 and his readiness to fulfil this covenant were the financial factors of the compact, that had as much to do with the acquirement of the claims as Ray's option or Margrave's action in going upon the claims to ascertain their value. The option and the knowledge which Margrave acquired of the value of the claims would have been unavailing without the means to secure them.

7. Appellant's promise to supply the means was an assurance of financial support arising out of the agreement, and which Margrave carried with him when he went upon the ground, and it cannot be assumed that he would have gone without such assurance. The purported value of the claims, as represented by Ray, and the desire to acquire them, brought the parties together in an agreement that charged Margrave with the duty of investigating the mining claims. When he found them to be of value sufficient in his judgment to warrant the venture, he was in duty bound to report to the appellant to enable him to comply with his part of the agreement. The relationship created by the agreement of joint adventure, being fiduciary in its character, laid upon him a strict duty to deal fairly with his correlates with reference to any part of the subject-matter of the agreement intrusted to his supervision. If he had complied with his covenant in this respect, and had informed appellant of the value of the claims, as he did Walser, and appellant had then failed to contribute money in pursuance of his promise, then there would have been a failure of consideration on his part, which would have excluded him from participating in the enterprise. But

under the terms of the agreement, as alleged in the complaint, he could not be foreclosed of his right to share in the property and profits of the enterprise without having an opportunity to furnish the money, simply because Walser and Margrave failed to keep their covenants with him.

It appears from the averments of the complaint that appellant was at all times ready to keep his part of the agreement and contribute the $2,500, but that he was prevented from so doing by the action of Walser and Margrave. A good and sufficient reason is therefore shown why appellant has not carried out his part of the joint adventure, which relieves him from any breach of the contract, by failure of consideration on his part. This court, in Botsford v. Van Riper, cited supra, has had occasion to emphasize the nature of a trust relationship created by similar facts, in the following language:

"We further find that the law is well established that the relation between joint adventurers is fiduciary in its character, and the utmost good faith is required of the trustee to whom the deal or property may be intrusted and that such trustee will be held strictly to account to his coadventurers, and that he will not be permitted by reason of the possession of the property or profits, whichever the case may be, to enjoy an unfair advantage, or have any greater rights in the property by reason of the fact that he is in possession of the property or profits as trustee, than his coadventurers are entitled to. The mere fact that he is intrusted with the rights of his coadventurers imposes upon him the sacred duty of guarding their rights equally with his own and he is required to account strictly to his coadventurers, and, if he is recreant to his trust, any rights they may be denied are recoverable."

8. We know of no equitable principle arising from the facts stated that could justify Margrave, or Walser and Margrave, as the case may be, in canceling the agreement with appellant after it was discovered that the property concerning which they had entered into the agreement,

was valuable. That they, or either of them, furnished the money to secure title to the property, could not work a forfeiture of his right. Appellant had not declined to furnish the money, for he had not been informed that any money was required of him to purchase or secure title to the property. Money advanced by them for such purpose would be in the nature of a loan to the joint adventure and for the benefit of all the joint adventurers.

"Money advanced by one party to a joint adventure is held to be a loan to the venture, for which the party is entitled to be reimbursed out of the proceeds of the venture; but, by reason of the advancing of such money, it does not entitle the party so advancing to any superior right as against his coadventurers." Botsford v. Van Riper and cases cited, reaffirmed in Lind v. Webber 36 Nev. 623.

Counsel for respondents cited Powell v. Maguire, 43 Cal. 11, and Hyer v. Richmond Traction Co., 168 U. S. 471, to support their contention that an enforceable agreement is not stated in the complaint. It was held in these cases that an agreement to enter into a partnership cannot be enforced in a suit in equity, and that a party will be confined to an action at law for a breach of the contract. In Mann v. Bowen, 85 Ga. 616, cited in support of the same contention, the court adhered to the rule that an action at law lies for the breach of a contract to form a partnership.

9. We do not question the rule stated in the cases cited, but it is a rule that is inapplicable to the case at bar, in which the complaint discloses a joint adventure. The principal distinction between a partnership and joint adventure is that, in most jurisdictions, where any is regarded as existing, one party may sue the other at law for a breach of the contract; but this right will not preclude a suit in equity for an accounting. 23 Cyc. 453–461. The distinction is recognized by this court in Botsford v. Van Riper, supra, and reaffirmed in Lind v. Webber, 36 Nev. 623, wherein the court said:

"It is also well settled in law that one party to a joint

adventure may sue the other at law for the breach of the contract, or share of the profits or losses, or a contribution for advances made in excess of his share, but the remedy at law does not preclude a suit in equity for an accounting. In this state, under our code of procedure, the district court in proper cases may administer both legal and equitable relief."

In Prince v. Lamb (Cal.) 60 Pac. 689, also cited by counsel for respondents, specific performance of an alleged "grub-stake" agreement was refused upon the statutory grounds of inadequacy of consideration and the unreasonableness of the contract. In the case before us there was no failure of consideration on the part of appellant, or question of its adequacy.

10. A joint adventure is clearly alleged in the complaint in which the appellant had obligated himself to furnish the purchase price of the claims upon receiving information Margrave had agreed to give if he found the claims to be of a sufficient value, and respondent's violation of their agreement in withholding this information, and appropriating appellant's stock, worked an implied trust as effectually as if appellant had actually furnished the consideration to purchase the property.

11. Respondents insist that this action is founded upon the fraud alleged in the complaint and is therefore barred by the three-year limitation of the statute in actions for relief on the ground of fraud.

We think that they are mistaken in this contention. That clause of the statute applies to actions which have their inception in fraud and under no circumstances could be applied to a case like the one under consideration, which would not be maintainable at all were it not for the fiduciary relationship created by the contract. Fraud is not the basis of the action. It is founded upon the agreement which created the trust relation.

True, it is alleged in the complaint that Walser and Margrave failed, refused, and neglected to notify appellant that the property was of great value and as represented.by Ray, and had been approved by Margrave, and that he and Walser suppressed, concealed, and withheld

from appellant this information and thus prevented him from complying with the terms of the agreement and to his contribution to the joint adventure; but it is plain, from a consideration of the entire complaint, that this allegation was made to show why appellant had not contributed the sum of $2,500, as stipulated in the oral agreement, and not as the ground of action. It is a mere incident and not the gravamen of the action. 19 Am. & Eng. Ency. Law (2d Ed.) p. 247.

The cause of action would be complete without the allegation of fraud if it had been alleged that appellant had contributed the money. His excuse for nonperformance, while involving fraud on the part of Walser and Margrave, is, in effect, equivalent to an allegation of the actual performance of his covenant. 9 Cyc. 724.

The case of Lang Syne M. Co. v. Ross, 20 Nev. 127, cited by the respondents to sustain their contention that the statute of three-year limitation applies in this case, is not in point. An examination of the facts of the case reveals that the cause of action alleged had its inception in fraud. In the case of Kelley v. Boettcher, 85 Fed. 55, also referred to, false representations were made to the complainants to induce them to make the conveyance. The cause of action was based on fraud and grew out of no contractual relations.

12. In the case at bar, the cause of action accrued upon respondents' breach of duty in preventing appellant from performing his contract, and excluding him from his share of the stock of the corporation, and was commenced within less than four years from its accrual. We think it is maintainable by reason of section 4970 of the Revised Laws of Nevada, which provides:

"An action for relief, not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued."

White v. Sheldon, 4 Nev. 280, seems to be closely in point. In that case (without going into a detail of the facts) a trust relation was created by reason of a parol agreement. The court held that the cause of action

accrued when the defendant, who had succeeded one
Johnson as trustee at request of plaintiff, the cestui que
trust, conveyed the trust property to another party.  In
applying the statute of limitations, the court said:

"Thus a period of less than four years elapsed between
the conveyance by Sheldon and the bringing of this
action, and the plaintiff's right would not be barred by
a lapse of time short of four years, for this form of
action is governed by the eighteenth section of the
statute of limitations.  None of the other sections * * *
seem to cover cases of this kind."

The section referred to is section 4970 of the Revised
Laws.

It is true, in White v. Sheldon the element of fraud
did not enter into the transaction, but neither did it
enter into the transaction under consideration, except
to excuse the nonperformance on the part of appellant
by reason of the respondents' alleged breach of duty in
withholding information as to the value of the claims,
and in appropriating appellant's interest in the stock of
the corporation.  While the facts in the case at bar are
somewhat different from White v. Sheldon, the principle
involved is the same, and the same statute of limitations
applies.  In each case it was the understanding between
the parties which gave the right of action, and a breach
of duty, imposed by agreement, which caused it to
accrue.

13. Under our view of the action stated in the com-
plaint, the contention that the oral agreement alleged is
within the statute of frauds, for the reason that it was
to acquire an estate or interest in lands, cannot be
upheld.  It is well established that where an implied
trust is effectuated, the contract on which it was based,
notwithstanding it was made for the purpose of acquir-
ing an estate or interest in lands, need not be in writing.
Levy v. Ryland 32 Nev. 460;  Hornsilver Cases 35
Nev. 447, 464.

The trial court sustained the demurrer to the com-
plaint, and it appears from the written opinion of the

court that the laches of the appellant in instituting the action, apparent from the allegations of the complaint, was the ground of the ruling.

As we read the opinion, the court held that, because a period of nearly four years had elapsed from the time the appellant, if he had acted with ordinary prudence, should have discovered that respondents intended to disregard his rights, he was guilty of laches, and therefore debarred from maintaining this action. This was error, and, as there is no averment in the complaint sufficient to make the ruling right, though the reasons given for it are wrong, the decision of the trial court, sustaining the demurrer and entering judgment thereon, must be reversed.

14. Strictly speaking, laches implies more than mere lapse of time in asserting a right; it requires some actual or presumable change of circumstances rendering it inequitable to grant relief. 16 Cyc. 152. Notwithstanding some courts have applied this doctrine without any intervening element of estoppel, where an unreasonable length of time has elapsed, the rule that lapse of time alone will not constitute laches may be said to be well settled. Something must occur in the meantime in relation to the property or parties, to make it inequitable to enforce the late demand.

Chief Justice Fuller, in delivering the opinion of the court in O'Brien v. Wheelock, 184 U. S. 493, said:

"The doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time is thoroughly settled. Its application depends on the circumstances of the particular case. It is not a mere matter of the lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief."

And again in 10 Ruling Case Law, 396:

"While statements are to be found in some of the cases intimating that unreasonable delay, and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity, the generally

accepted doctrine appears to be that laches is not, like limitation, a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced; this inequity being founded on some change in the condition or relation of the property or parties."

"Mere lapse of time, not extending beyond the period fixed in the statute of limitations for the commencement of the suit, constitutes no bar to the action." Lang Syne M. Co. v. Ross, 20 Nev. 140, 19 Am. St. Rep. 337.

It is unprofitable to collect and cite authorities to sustain a doctrine so generally recognized by the courts.

15. Some of the circumstances, in addition to the lapse of time, which will in equity constitute laches, are:

"The destruction of the muniments of title, the death or removal of parties, the number of innocent purchasers who may be affected, radical changes in the condition and value of the property, and its speculative character." Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14.

16, 17. Any circumstances tending to obscure the truth of the matter, as the loss of witnesses through efflux of time, may prompt a court of equity to apply the doctrine of laches. In fact, if it appears that the adverse party has lost any advantage he might have retained if the claim had been asserted with reasonable promptness, or exposed to any injury through inexcusable delay, a court of equity will not interfere to give relief to the dilatory claimant. Every case must depend upon its own peculiar circumstances.

18. To invoke a doctrine of laches in this action sufficient averments must appear in the complaint to warrant it. A case must be made out from the complaint, and for the purposes of this decision its allegations are to be taken as true. We concur with the learned trial judge in his conclusion that, if appellant "had acted as an ordinarily prudent person, he could have learned in July, 1913, of the incorporation of the Nevada Packard Mines Company, and other facts which would have at least put him upon his inquiry."

Under the facts stated in the complaint, knowledge

of the fact that respondents had denied his rights in the property, is imputed to him in July, 1913, when respondents organized the corporation and caused the capital stock of the company to be issued to themselves in consideration of the transfer of the claims to the company. There then appears from the complaint a lapse of time of about three years and nine months from the time the appellant is chargeable with knowledge that Walser and Margrave had violated their agreement, until he commenced this action on April 13, 1917, during which he asserted no claim.

19. Aside from this lapse of time, what other element partaking of the nature of estoppel affirmatively appears from the complaint? Respondents contend that there was an enormous increase in the value of the property from mining claims that could have been purchased in April, 1913, for the sum of less than $2,500, to capital stock of the company, one-fourth of which was worth $93,750. This is hardly a conservative statement of what the complaint shows as to the increase in value of the property. It fairly appears from the allegations of the complaint that the parties expected to purchase the claims for $2,500. It is also alleged that Margrave found the claims to be of great value. But, conceding that the property had advanced considerably in value, even under the rule that the doctrine of laches is peculiarly applicable in cases involving mining transactions, this fact alone will not bar a recovery.

"If property has been acquired by fraud, or in utter disregard of the rights of others, and such property subsequently becomes of great value, the person defrauded would not for that reason alone be debarred from recovering possession, even though he reaped an increment entirely disproportionate to any efforts put forth by himself." Gamble v. Hanchett, 34 Nev. 351, 126 Pac. 111.

But they say that appellant awaited the event for nearly four years, and, when he found that the property had increased enormously in value, now seeks to come

in and share an unearned increment and deprive the respondents of the fruits of their energy and enterprise. Whatever may be the actual facts of the case, it does not affirmatively appear, from the averments of the complaint, that appellant was lying in wait for favorable developments of the property to begin this action, and we cannot import such an allegation into the complaint by way of inference from other facts stated therein. As stated by the court in Lang Syne M. Co. v. Ross, supra:

"It does not affirmatively appear upon the face of the complaint in this action that, at the time of the discovery of the fraud, the plaintiff considered that the property was worthless; that it kept silent, waiting for the defendant, Ross, to develop the mine; and that then, after the value of the mine had been established by his labor, expense, and hazard, the plaintiff commenced this action 'to rob him of the fruits of his industry and enterprise.' It may be that, upon issues of fact and proofs made upon the trial, such a state of facts may be presented. But our decision upon the questions * * * raised by the demurrer must be governed solely by the sufficiency of the allegations of the complaint. We have no right to anticipate what the evidence will be."

Aside from the increase in the value of the mining property, the amount of which, whether great or small, is uncertain, no other element partaking of the nature of estoppel is presented by the pleading. Whether the increase in value is due to unusual efforts and expenditures on the part of the plaintiff, or in a large measure as the natural result of a rich mine, is entirely speculative, so far as the complaint is concerned.

No loss of evidence, rights of innocent purchasers, change in relation to the parties or property, or great expenditures in the improvements thereof, or the like circumstances, which, in conjunction with the lapse of time, often constitute laches, appear in the complaint, and, as observed in the foregoing case, we have no right

now to anticipate the appearance of any in the pleadings or proof.

**20, 21.** Besides, the statute of limitations has not run, and by reason thereof strong circumstances must exist to require the application of the doctrine of laches. The burden is on the respondents to show from suitable averments in the complaint that such circumstances exist. Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14.

The judgment of the district court is reversed, and the cause remanded. A reasonable time will be designated by the district court for the respondents to answer the complaint.

COLEMAN, C. J.: I concur.

SANDERS, J., dissenting:

The agreement in question is made the subject of the action, and its violation the cause. The respondents are trustees ex maleficio. Pom. Contracts, p. 207; Bispham, Prs. of Eq. sec. 92; 2 Pom. Eq. Jur. secs. 1053–1055; 1 Story's Eq. Jur. 187; Perry, Trusts, sec. 106. Therefore subdivision 4 of section 4967 of the Revised Laws covers the case made by the complaint.

The judgment upon this ground should be affirmed.